IN THE UNITED STATES U.S. DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

JANE DOE, a minor

                     Plaintiff,

vs.

                                       CASE NO. 0:20-cv-60702-AHS

KIK INTERACTIVE INC., a Canadian
Corporation,
MEDIALAB.AI INC., a Delaware Corporation

                                       CIVIL

                        Defendants.

_____

## DEFENDANTS KIK INTERACTIVE, INC. AND MEDIALAB.AI INC.'S MOTION TO DISMISS COMPLAINT AND INCORPORATED MEMORANDUM OF LAW

**TABLE OF CONTENTS**

**Page**

I.     INTRODUCTION ................................................................................................ 1

II.    BACKGROUND ................................................................................................. 2

    A.    CDA § 230 ............................................................................................. 2

         1.    Under CDA § 230, internet platforms are generally immune from suit based on the conduct of their users. ..................................... 2

         2.    FOSTA creates a limited exception in specific cases of criminal misconduct. .......................................................... 3

    B.    Kik Messenger .................................................................................... 5

    C.    Plaintiff's Allegations ......................................................................... 5

III.    LEGAL STANDARD ......................................................................................... 6

IV.    ARGUMENT ...................................................................................................... 6

    A.    Kik is Immune under CDA § 230. ...................................................... 7

         1.    Element one: Kik is an interactive computer service provider. ................ 8

         2.    Elements two and three: Plaintiff seeks to hold Kik liable as the publisher of content supplied by third parties. .......................................... 8

    B.    The Complaint Does Not Allege that Kik Violated Section 1591 ...................... 10

         1.    There are no allegations that Kik was aware of Plaintiff's alleged sex trafficking. ...................................................................... 11

         2.    Kik did not participate in a sex trafficking venture. ................................ 13

         3.    Kik did not receive any benefits because of a sex trafficking venture ............................................................................................. 14

    C.    The Complaint Does Not State a Claim Under Section 1595 ............................ 15

         1.    There are no facts indicating Kik should have known of Plaintiff's alleged sex trafficking. .......................................................... 16

         2.    Kik did not participate in a venture that engaged in sex trafficking. ........ 17

V.    LEAVE TO AMEND ...................................................................................... 18

VI.    CONCLUSION ................................................................................................ 19

# TABLE OF AUTHORITIES

**Page**

**Cases**

*A.B. v. Marriot Int'l, Inc.*,
  2020 WL 1939678 (E.D. Penn. April 22, 2020)................................................................15, 16

*Almeida v. Amazon.com, Inc.*,
  456 F.3d 1316 (11th Cir. 2006) ...........................................................................................3

*Am. Marine Tech, Inc. v. World Grp. Yachting, Inc.*,
  418 F. Supp. 3d 1075 (S.D. Fla. 2019) ................................................................................6

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007)..............................................................................................................6

*Cancer Ctr. Assocs. for Research & Excellence, Inc. v. Phila. Ins. Cos.*,
  2015 WL 2235347 (E.D. Cal. May 12, 2015) ..............................................................18, 19

*Carfano v. Metrosplash, Inc.*,
  339 F. 3d 1119 (9th Cir. 2003) ............................................................................................9

*Doe 3 v. Red Roof Inns, Inc.*,
  2020 WL 1872333 (N.D. Ga. Apr. 13, 2020) ...............................................................11, 13

*Doe v. MySpace, Inc.*,
  528 F.3d 413 (5th Cir. 2008) ...........................................................................................9, 10

*Dowbenko v. Google Inc.*,
  582 F. App'x 801 (11th Cir. 2014)...................................................................................6, 7

*Fair Hous. Council of San Fernando Valley v. Roommates.com, LLC*,
  521 F.3d 1157 (9th Cir. 2008) ..........................................................................................7, 8

*Geiss v. Weinstein Co. Holdings LLC*,
  383 F. Supp. 3d 156, 169 (S.D.N.Y. 2019).........................................................11, 13, 14, 15

*Gonzalez v. Google, Inc.*,
  282 F. Supp. 3d 1150 (N.D. Cal. 2017) ...............................................................................9

*Herrick v. Grindr, LLC*,
  306 F. Supp. 3d 579 (S.D.N.Y. 2018), *aff'd*, 765 F. App'x 586 (2d Cir. 2019)........................9

*Jones v. Dirty World Entm't Recordings LLC*,
  755 F.3d 398 (6th Cir. 2014) ...............................................................................................7

*Kolbek v. Twenty First Century Holiness Tabernacle Church, Inc.*,
  2013 WL 6816174 (W.D. Ark. Dec. 24, 2013) ...................................................................14

**TABLE OF AUTHORITIES**
(continued)

Page

*Krome Mining Partners v. United States*,
  2009 WL 10700153 (S.D. Fla. Sept. 2, 2009) .......................................................18

*Lawson v. Rubin*,
  2018 WL 2012869 (E.D.N.Y. Apr. 29, 2018) .......................................................12

*M.A. v. Wyndham Hotels & Resorts, Inc*.,
  425 F. Supp. 3d 959 964 (S.D. Ohio 2019) ............................................15, 16, 17

*McMillan v. Amazon.com, Inc.*,
  2020 WL 1896703 (S.D. Tex. Jan. 7, 2020) ...........................................................9

*Mezey v. Twitter, Inc.*,
  2018 WL 5306769 (S.D. Fla. July 19, 2018) ...........................................................8

*Misko v. Speedway, LLC*,
  2018 WL 2431638 (E.D. Mich. May 29, 2018)......................................................17

*Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc*.,
  591 F.3d 250 (4th Cir. 2009) ..................................................................................7

*Noble v. Weinstein*,
  335 F. Supp. 3d 504 (S.D.N.Y. 2018).................................................10, 12, 13, 14

*Ricci v. Teamsters Union Local 456*,
  781 F.3d 25 (2d Cir. 2015)......................................................................................7

*Roca Labs, Inc. v. Consumer Opinion Corp.*,
  140 F. Supp. 3d 1311 (M.D. Fla. 2015) ...............................................................7, 8

*Shuler v. Duke*,
  792 F. App'x 697 (11th Cir. 2019)..........................................................................7

*Sinaltrainal v. Coca-Cola Co.*,
  578 F.3d 1252 (11th Cir. 2009), *abrogated on other grounds by Mohamad v.*
  *Palestinian Auth.*, 566 U.S. 449 (2012) ...............................................................6, 7

*United States v. Afyare*,
  632 F. App'x 272 (6th Cir. 2016).............................................................11, 12, 13

*Woodhull Freedom Found. v. United States*,
  334 F. Supp. 3d 185 (D.D.C. 2018), *rev'd on other grounds,* 948 F.3d 363
  (D.C. Cir. 2020) ....................................................................................................12

*Zeran v. Am. Online Inc.*,
  129 F.3d 327 (4th Cir. 1997) .................................................................................10

## TABLE OF AUTHORITIES
(continued)

**Page**

**Statutes**

18 U.S.C.

§ 1591 ............................................................................................................ *passim*
§ 1591(a) ................................................................................................................10, 12
§ 1591(a)(1) ................................................................................................................4, 11
§ 1591(a)(2) ................................................................................................4, 10, 12, 13
§1591(e)(4) ................................................................................................4, 11, 12, 17
§ 1595 ............................................................................................................ *passim*
§ 1595(a) ................................................................................................................15, 17

47 U.S.C.

§ 230(b)(1)-(2) ................................................................................................................2, 3
§ 230(c)(1) ................................................................................................................3
§ 230(e)(3) ................................................................................................................3
§ 230(e)(5)(A) ................................................................................................4, 10, 14
§ 230(f)(2) ................................................................................................................8

Allow States and Victims to Fight Online Sex Trafficking Act of 2017, Pub. L.
No. 115-164, 132 Stat. 1253 ...................................................... *passim*

Communications Decency Act § 230 .................................................. *passim*

**Other Authorities**

164 CONG. REC. S1849–08 (daily ed. Mar. 21, 2018)....................................3, 4

Federal Rule of Civil Procedure

11................................................................................................................18
12(b)(6) ................................................................................................................1, 6
15(a)................................................................................................................18

H.R. Rep. No. 115-572 pt. 1 (2018).................................................................3, 4, 12

Defendants Kik Interactive Inc. ("Kik") and MediaLab.Ai Inc. ("MediaLab," and Kik Interactive collectively, "Defendants"), pursuant to Federal Rule of Civil Procedure 12(b)(6), move to dismiss the Complaint as against them, and say:

## I.  INTRODUCTION

This case presents a matter of first impression.  Since 1996, Section 230 of the Communications Decency Act ("CDA § 230") has given online platforms broad immunity from tort claims based on the use or misuse of their products by customers.  In 2018, Congress created a narrow exception to this immunity in the Fight Online Sex Trafficking Act ("FOSTA"), carving out cases where the defendant knowingly and directly participates in sex trafficking.[1] This is, as far as Defendants and their counsel can determine, the first case to test the boundaries of the new exception.

But merely because this case is novel does not mean that it is difficult.  Congress passed FOSTA in response to reports that a handful of websites had essentially built their business models on sex trafficking.  Not only were they knowingly profiting from reprehensible crimes, but the sites were actively encouraging the perpetrators and concealing wrongdoing from law enforcement.  To deal with these malicious actors without causing collateral damage to other online service providers, FOSTA left the general framework of immunity under CDA § 230 intact save for when a defendant violates 18 U.S.C. § 1591 ("Section 1591").  As a criminal statute, Section 1591 imposes a very high bar for liability and only applies to defendants who knowingly and directly participate in sex trafficking.  The statutory language, the legislative history, and the pre-existing case law on Section 1591 all point to the same conclusion: An

---

[1] For purposes of this brief, and consistent with Plaintiff's and other courts' use of the term, Defendants use the umbrella term "sex trafficking" to refer to the full range of misconduct proscribed by 18 U.S.C. § 1591.

online platform is immune from suit based on the actions of its users unless the site has **knowingly** and **directly** participated in a ***sex trafficking venture***.

Plaintiff Jane Doe's ("Plaintiff") Complaint does not come close to this standard. While Plaintiff alleges that she was victimized by men contacting her through the Kik Messenger App, she does not, and cannot allege facts that Kik knew what was happening to her, much less that Kik deliberately facilitated it or received benefits because of it. As the Complaint cannot show that Defendants violated Section 1591, they are immune from this suit under CDA § 230. And even if Plaintiff could avoid this insurmountable problem, which she does not, the Complaint also fails to plead all of the elements required for a claim under 18 U.S.C. § 1595 ("Section 1595").

Normally, a plaintiff would be given leave to amend. But to overcome the Complaint's existing defects, Plaintiff would need to change her theory of liability and add allegations regarding Kik that are different in kind, not degree. She cannot plausibly do that because there is a world of difference between the Complaint as it stands (which only alleges that Kik was generally aware that predators used its platform), and a complaint that would allege Kik violated Section 1591 (which would require Plaintiff allege that Kik knowingly and directly helped these predators victimize her). The Court should therefore dismiss the Complaint and require Plaintiff to show cause that granting leave to file an amended complaint would not be futile. If Plaintiff cannot, then this matter should be dismissed with prejudice.

## II.    BACKGROUND

### A.    CDA § 230

#### 1.    Under CDA § 230, internet platforms are generally immune from suit based on the conduct of their users.

Congress passed CDA § 230 in 1996 "to promote the continued development of the internet" as a "vibrant and competitive free market . . . unfettered by Federal or State regulation." 47 U.S.C. § 230(b)(1)-(2)).  Among other features, CDA § 230 creates broad federal immunity for claims against online service providers such as Kik based on content created by or the actions of users: "No provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider."  *Id.* at 230(c)(1).  The statute thus "establish[es] ***broad*** federal immunity to ***any cause of action*** that would make service providers liable for information originating with a third-party user."[2] *Almeida v. Amazon.com, Inc*., 456 F.3d 1316, 1321 (11th Cir. 2006).  Congress also expressly preempted all state laws that are inconsistent with this immunity.  47 U.S.C. § 230(e)(3) ("No cause of action may be brought and no liability may be imposed under any State or local law that is inconsistent with this section.").

> ### 2.      FOSTA creates a limited exception in specific cases of criminal misconduct.

In 2018, Congress enacted FOSTA in response to the growing spread of sex trafficking operations over the internet.  Allow States and Victims to Fight Online Sex Trafficking Act of 2017, Pub. L. No. 115-164, 132 Stat. 1253.  Congress found that a handful of malicious websites were ***deliberately*** and actively facilitating prostitution and sex trafficking on their websites.  *See* H.R. REP. NO. 115-572, pt. 1, at 3–5 (2018) ("[O]nline classified sites like Backpage.com, Eros, Massage Troll, and cityxguide…have gone beyond merely hosting advertisements, [] and have ***purposely*** created platforms designed to facilitate prostitution and sex trafficking").  Most infamously, the site known as Backpage "had ***knowingly*** concealed evidence of criminality by systematically editing its 'Adult' ads [by] automatically delet[ing] incriminating words [and]

---

[2] Unless otherwise noted, all emphasis is added, and internal quotation marks and citations are omitted.

then manually delet[ing] incriminating language that filters missed." *Id*. Worse still, Backpage's business model relied almost entirely on advertisements "*designed* to sell children for sex." *See* 164 CONG. REC. S1849–08, S1852–59 (daily ed. Mar. 21, 2018).

To prevent sites like Backpage from misusing immunity, FOSTA created a narrow and limited exception to CDA § 230. Specifically, FOSTA provided that CDA § 230 would not bar a suit under 18 U.S.C. § 1595 (which provides a civil remedy for sex trafficking victims) *but only* if the underlying conduct constituted a direct violation of Section 1591—the primary federal statute prohibiting sex trafficking and child pornography. 47 U.S.C. § 230(e)(5)(A).

The legislative record is clear that Congress only intended to revoke immunity in extreme cases (like Backpage) where the online platform knowingly and directly facilitated sex trafficking or similar misconduct. 164 CONG. REC., at S1860–62 (statement of Senator Durbin ("[FOSTA] is a narrowly crafted bill that would ensure that Section 230 of the Communications Decency Act does not provide legal immunity to websites like Backpage that *knowingly* facilitate sex trafficking"); *id.* (statement of Senator Schumer ("Key to my support is my understanding that this legislation would not allow nuisance lawsuits against technology companies.")). Crucially, Congress made it clear that to pierce immunity, "general knowledge that sex trafficking occurs on a website will not suffice as the knowledge element must be proven as to a specific victim." *See* H.R. Rep. No. 115-572, at 5.

Congress's intent was clearly reflected in the statutory text as well. By invoking Section 1591, the FOSTA exception only applies to those who directly participate in sex trafficking or child pornography and those who "*knowingly*. . . benefit[], financially or by receiving anything of value, from participation in a venture which has engaged in [a primary violation]." 18 U.S.C. § 1591(a)(1)–(2). Section 1591 explicitly defines "participation in a venture" as "*knowingly*

4

assisting, supporting, or facilitating a [primary violation]."   *Id.* at § 1591(e)(4).   FOSTA therefore only revokes CDA § 230 immunity for those websites that knowingly assist, support, or facilitate sex trafficking on their services, and does not otherwise change the existing framework.

### B.      Kik Messenger

Kik is a Canadian social media company and the developer of a fun and easy-to-use messenger application ("Kik Messenger").   (Compl. ¶¶ 6, 8.)   Kik Messenger "[c]onnect[s] the world through chat," by allowing users to transmit and receive messages, photos, videos, sketches, and other content through a smartphone's data plan or Wi-Fi.   (*Id.* at ¶¶ 8–10.) Because Kik Messenger works through the internet, it does not require a telephone number to register an account.   (*See id.*)   As of May 2016, Kik Messenger had approximately 300 million registered users, which included approximately 40% of teenagers in the United States at the time. (*Id.* at ¶ 9.)

### C.      Plaintiff's Allegations

Plaintiff is a minor who used Kik Messenger.   (Compl. ¶¶ 5, 26.)   According to the Complaint, a number of adult men (referred to as the "Identified Kik Users" in the Complaint) communicated with Plaintiff through Kik Messenger and sent her various lewd images and messages.   (*Id.* at ¶ 26.)   Plaintiff further alleges that she sent nude photographs of herself to at least some of these men "at th[eir] direction."   (*Id.*)

Beyond the fact that the messages were sent through Kik Messenger however, the Complaint contains no allegations that Kik had any actionable role in what the Identified Kik Users did to Jane Doe.   The Complaint does not contend that Kik was aware that Jane Doe was communicating with adult men, much less that they were exchanging sexually explicit material. Nor does the Complaint allege any facts suggesting that Kik was aware that the Identified Kik Users were engaging in unlawful activity with Plaintiff.   Plaintiff does not allege that she

reported or blocked the Identified Kik Users or any other facts that might have put Kik on notice of what was happening to her.  The Complaint does not allege that Kik took any active role in what happened or directly facilitated the conduct of the Identified Kik Users in any other way. Instead, the Complaint alleges Kik was *generally* aware, through public reporting, that Kik Messenger was sometimes used by predators to contact and groom victims.  (*Id*. at ¶ 21.)

## III.   LEGAL STANDARD

To survive a Rule 12(b)(6) motion to dismiss, "the plaintiff must allege sufficient facts to make the claim 'plausible on its face.'"  *Dowbenko v. Google Inc.*, 582 F. App'x 801, 803 (11th Cir. 2014) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, (2007)).  "[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice to meet this standard."  *Dowbenko*, 582 F. App'x at 803.  A complaint that alleges only "[t]he mere possibility the defendant acted unlawfully is [therefore] insufficient to survive a motion to dismiss."  *Sinaltrainal v. Coca-Cola Co.*, 578 F.3d 1252, 1261 (11th Cir. 2009), *abrogated on other grounds by Mohamad v. Palestinian Auth.*, 566 U.S. 449 (2012).  Courts "are not bound to accept as true a legal conclusion couched as a factual allegation."  *Am. Marine Tech, Inc. v. World Grp. Yachting, Inc.*, 418 F. Supp. 3d 1075, 1079–80 (S.D. Fla. 2019); *Dowbenko*, 582 F. App'x at 803.  Similarly, "unwarranted deductions of fact in a complaint are not admitted as true."  *Sinaltrainal*, 578 F.3d at 1260.

## IV.   ARGUMENT

The Complaint must be dismissed because Kik is immune from suit under CDA § 230. Kik is an online service provider, and is thus generally immune from lawsuits based on how its customers have misused its platform.  The only relevant exception to CDA § 230 immunity are lawsuits where the underlying conduct is a violation of Section 1591.  Plaintiff cannot meet this

exception because Section 1591 requires active and knowing participation in a sex trafficking offense, and the Complaint offers no facts to support an allegation that Kik had any actual knowledge or direct involvement in what happened to Plaintiff, or knowingly received any benefits because of it.[3]  And even apart from CDA § 230, the Complaint still fails to state a claim because it does not plead all of the elements of a cause of action under Section 1595.

   A.   **Kik is Immune under CDA § 230.**

   Courts regularly dismiss complaints at the pleading stage when the allegations of the complaint show that the defendant is clearly immune under CDA § 230.  *See*, *e.g.*, *Shuler v. Duke*, 792 F. App'x 697, 704 (11th Cir. 2019) (affirming dismissal under CDA § 230); *Ricci v. Teamsters Union Local 456*, 781 F.3d 25, 28 (2d Cir. 2015) ("Although [p]reemption under the Communications Decency Act is an affirmative defense, . . . it can still support a motion to dismiss if the statute's barrier to suit is evident from the face of the complaint.").  As the entire purpose of immunity is to avoid subjecting the defendant to litigation in the first instance, the Court must resolve CDA § 230 immunity "at the earliest possible stage of the case" to avoid "costly and protracted legal battles."  *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc*., 591 F.3d 250, 255 (4th Cir. 2009) (quoting *Fair Hous. Council of San Fernando Valley v. Roommates.com, LLC*, 521 F.3d 1157, 1175 (9th Cir. 2008)).  Consistent with Congress's intention to broadly protect online platforms from suit, "close cases . . . must be resolved in favor of immunity."  *Jones v. Dirty World Entm't Recordings LLC*, 755 F.3d 398, 408 (6th Cir. 2014).  To do otherwise would "cut the heart out of section 230 by forcing websites to face death by ten thousand duck-bites[.]"  *Id.*

---

[3] The only allegation regarding Kik's purported knowledge of the Identified Kik Users and Plaintiff is unsupported and conclusory (Compl. ¶43), and should be disregarded as such. *Dowbenko*, 582 F. App'x at 803; *Sinaltrainal*, 578 F.3d at 1260.

CDA § 230 entitles a defendant to immunity where three elements are met: (1) the defendant is an online service provider; (2) the cause of action treats the defendant as the publisher or speaker of the content in question; and (3) someone other than the defendant provided or created the content at issue in the action.  *Roca Labs, Inc. v. Consumer Opinion Corp.*, 140 F. Supp. 3d 1311, 1319 (M.D. Fla. 2015).  All three elements are clearly met here.

### 1.      Element one: Kik is an interactive computer service provider.

An interactive computer service provider is "any information service, system, or access software provider that provides or enables computer access by multiple users to a computer server . . . ."  47 U.S.C. § 230(f)(2).  There is no question, and indeed, the Complaint alleges, that Kik is "an interactive computer service."  (Compl. ¶¶32.)

### 2.      Elements two and three: Plaintiff seeks to hold Kik liable as the publisher of content supplied by third parties.

The "Identified Kik Users," not Kik, generated the sexually explicit messages at the heart of this case (Compl. at ¶ 33–39.), yet Plaintiffs' suit seeks to hold Kik responsible for their content as though Kik were the publisher or speaker of the content at issue.  (*Id.* ¶¶ 26, 42-43.)  The second and third elements of CDA § 230 immunity are therefore met and this suit is barred.  *Roca Labs*, 140 F. Supp. 3d at 1323 (CDA § 230 immunity applied to lawsuit against opinion website; posts that allegedly defamed and interfered with the business of the plaintiff could not be imputed to the platform).

CDA § 230 also bars Plaintiffs' claim to the extent it is premised on the notion that Kik should have more aggressively policed its platform.  CDA § 230 applies to any claim that tries to hold the defendant liable for the "exercise of a publisher's traditional editorial functions—such as deciding whether to publish, withdraw, postpone or alter content."  *Mezey v. Twitter, Inc.*, 2018 WL 5306769, at *1–2 (S.D. Fla. July 19, 2018).  "Any activity that can be boiled down to

8

deciding whether to exclude material that third parties seek to post online is perforce immune under section 230." *Id.* (citing *Roommates.com, LLC*, 521 F.3d at 1170–71).   Under this rule, courts consistently hold that CDA § 230 bars any claim based on a website's alleged failure to take down content, exclude certain users, or prevent certain users from communicating with one another.  *See, e.g., Doe v. MySpace, Inc.*, 528 F.3d 413, 420 (5th Cir. 2008) (MySpace was immune to claims by Jane Doe plaintiff that the website failed to adequately protect her from predators; *Herrick v. Grindr, LLC*, 306 F. Supp. 3d 579, 588–92 (S.D.N.Y. 2018), *aff'd,* 765 F. App'x 586 (2d Cir. 2019) (dating app was immune to claims based on its alleged failure to adequately prevent stalking and harassment by its users); *Gonzalez v. Google, Inc.*, 282 F. Supp. 3d 1150, 1165 (N.D. Cal. 2017) (victims of terrorism could not sue YouTube for failing to stop ISIS from using the platform).

Plaintiffs' allegations that Kik failed to "implement policies sufficient to combat a known problem" (Compl. at ¶¶42, 45; *see also id.* at ¶¶ 19, 21–22, 24, 26) are therefore squarely in the category of claims bared by CDA § 230.  *McMillan v. Amazon.com, Inc.*, 2020 WL 1896703, at *8 (S.D. Tex. Jan. 7, 2020) ("[C]laims that hold internet service providers liable for failure to monitor, screen, or delete third-party generated content [are barred]."); *MySpace*, 528 F.3d at 420 (MySpace was immune, "notwithstanding [plaintiff's] assertion that they only seek to hold MySpace liable for its failure to implement measures that would have prevented Julie Doe from communicating with [a predator]"); *see also Carfano v. Metrosplash, Inc.*, 339 F. 3d 1119, 1124 (9th Cir. 2003) ("so long as a third party willingly provides the essential published content, the interactive service provider receives full immunity regardless of the specific editing or selection process").

*MySpace* is directly on point.  There, a minor plaintiff sued the social network MySpace after she was sexually victimized by a man she met through the website.  528 F.3d at 416.  The Fifth Circuit held that MySpace was immune under CDA § 230 since the claims were premised on the site's failure to adequately police its members or warn its users about possible dangers. *Id.* at 420.  The court noted that this was consistent with the purpose of the statute as absent broad tort immunity websites would either adopt draconian enforcement policies that would stifle the free and open flow of information on the internet or shut down completely.  *Id.* at 419. And as the panel noted, CDA § 230 does not leave a plaintiff without recourse: "None of this means, of course, that the original culpable party who posts defamatory messages would escape accountability.  Congress made a policy choice, however, not to deter harmful online speech through the separate route of imposing tort liability on companies that serve as intermediaries for other parties' potentially injurious messages."  *Id.* (quoting *Zeran v. Am. Online Inc.*, 129 F.3d 327, 331-32 (4th Cir. 1997)).

Kik is accordingly immune from this lawsuit under CDA § 230.

### B.      The Complaint Does Not Allege that Kik Violated Section 1591.

Under FOSTA, Plaintiff can only avoid CDA § 230 immunity if Kik's alleged conduct constitutes a violation of Section 1591.  *See* 47 U.S.C. § 230(e)(5)(A).  Section 1591 punishes (1) primary violators who directly participate in sex trafficking or child pornography; and (2) secondary participants who knowingly "benefit[], financially or by receiving anything of value, from participation in a venture" with a primary violator.  18 U.S.C. § 1591(a).  Plaintiff alleges that Kik falls into the latter category, arguing that Kik "knowingly" participated in a venture with the Identified Kik Users "by not implement[ing] policies sufficient to combat a known problem." (Compl. at ¶¶42, 45.)  But such conduct, even if true (it is not), does not constitute a violation of

Section 1591(a)(2) for three different reasons.  First, Section 1591 only applies to "knowing" violations and the Complaint does not contain any non-conclusory allegations that Kik was aware of what happened to Plaintiff.  (*See* Compl. ¶43.)  *Noble v. Weinstein*, 335 F. Supp. 3d 504, 523–24 (S.D.N.Y. 2018) (defendant must be aware of the specific primary violation to be liable as a secondary participant under Section 1591).  Second, it is not enough for the defendant to participate in ***any*** venture with a primary violator, they must "prove that the defendant actually participated in a ***sex-trafficking venture***."  *United States v. Afyare*, 632 F. App'x 272, 283–86 (6th Cir. 2016) (emphasis original).  Third, a defendant must know that the benefit it received is "because of" the sex trafficking venture.  *Geiss v. Weinstein Co. Holdings LLC*, 383 F. Supp. 3d 156, 169 (S.D.N.Y. 2019).

## 1. There are no allegations that Kik was aware of Plaintiff's alleged sex trafficking.

Actual knowledge of a specific violation is not the same as being aware of a general problem—yet the Complaint is founded on an attempt to conflate these two concepts. Section 1591 expressly defines the term "participation in a venture" as "***knowingly*** assisting, supporting, or facilitating" a violation of Section 1591(a)(1).  18 U.S.C. §1591(e)(4).  Plaintiff must accordingly show that Kik knew of what happened to her specifically and deliberately assisted, supported, or facilitated the primary sex-trafficking violation.  ELEVENTH CIRCUIT PATTERN JURY INSTRUCTIONS (CRIMINAL CASES), B9.1A (JUDICIAL COUNCIL OF THE UNITED STATES ELEVENTH JUDICIAL CIRCUIT 2020) ("The word 'knowingly' means that an act was done voluntarily and intentionally and not because of a mistake or by accident.").

The Complaint however contains no well-pled facts indicating that Kik had actual knowledge of Plaintiff's interactions with the Identified Kik Users.  Instead, the Complaint points to prior sex trafficking incidents connected to Kik Messenger that were ***unrelated to***

*Plaintiff*.  (*Id*. at ¶¶ 15–25.)  Plaintiff does not explain how Kik's prior knowledge of these unrelated episodes translates into Kik's knowledge of Plaintiff's alleged sex trafficking specifically.  Moreover, courts confronting Section 1591 claims consistently reject attempts to turn knowledge of a general risk into knowledge of a specific incident.  For example, in *Doe 3 v. Red Roof Inns, Inc.* a sex trafficking victim sued the hotel she was assaulted in under Sections 1591 and 1595.  2020 WL 1872333, at *1 (N.D. Ga. Apr. 13, 2020).  The court dismissed the complaint, finding that allegations that the hotel was aware of complaints about prostitution were not enough to show that they were aware of what had happened to plaintiff.  *Id*. at *3. ("Allegations that customers complained about prostitution existing on properties itself is insufficient to meet a know[ingly] standard under [Section] 1591(a).").  Other decisions are in accord.  *Noble*, 335 F. Supp. 3d at 513, 523–24 (dismissing Section 1591(a)(2) claim because there were no "specific factual allegations that plausibly allege [defendant] knew of [primary violator's] alleged violation of Section 1591 in Cannes"); *Lawson v. Rubin*, 2018 WL 2012869, at *12 (E.D.N.Y. Apr. 29, 2018) (dismissing Section 1591(a) claim because the complaint did "not allege that [defendant] was present for any of the alleged assaults, was told about them before or after they occurred, or knew that any of the plaintiffs were afraid of the [trafficker]").  And importantly, Congress made it clear when it passed FOSTA that "general knowledge that sex trafficking occurs on a website will not suffice as the knowledge element must be proven as to a specific victim."  H.R. Rep. No. 115-572, at 5.

Because "there are no facts in the [Complaint] supporting an inference of the *mens rea* standard necessary to peel back Section 230's protections," Plaintiff's claim against Kik must fail.  *Woodhull Freedom Found. v. United States*, 334 F. Supp. 3d 185, 203 (D.D.C. 2018), *rev'd on other grounds,* 948 F.3d 363 (D.C. Cir. 2020).

### 2.      Kik did not participate in a sex trafficking venture.

"Because guilt, or in this case liability, cannot be established by association alone, Plaintiff must allege specific conduct that furthered the sex trafficking venture." *Noble*, 335 F. Supp. 3d at 524.  Plaintiff fails to state a claim against Kik because a defendant can only be liable as a secondary participant under Section 1591 if they "knowingly assist[], support[], or facilitate[] a violation."  18 U.S.C. § 1591(e)(4).  It is not enough for a defendant to either participate in a lawful venture with sex traffickers or even to passively receive the financial benefits of sex trafficking—they must make "some ***overt act that furthers the sex trafficking aspect of the venture.***"  *Afyare*, 632 F. App'x at 286; *see also Geiss*, 383 F. Supp. 3d at 169 ("participation" requires "affirmative conduct furthering the sex-trafficking venture"); *Noble*, 335 F. Supp. 3d at 524 ("some participation in the sex trafficking act itself must be shown"); *Doe 3*, 2020 WL 1872333, at *3 ("[K]nowledge and some participation in the sex trafficking act itself must be shown.").  The Sixth Circuit used an extended and illuminating hypothetical to illustrate this point:

> [C]onsider a hypothetical defendant who joins a soccer team with some sex traffickers, who sponsor the team financially [] using the money they generate from sex trafficking activities. And assume that the sex traffickers do not conceal the source of this money from the rest of the team. . .  Ignoring the reprehensible amorality of our hypothetical defendant, who knowingly participates on a soccer team funded by sex trafficking money, the question is whether Congress criminalized his conduct in § 1591(a)(2). The district court thought not and. . . would require that a defendant actually participate and commit some "overt act" that furthers the sex trafficking aspect of the venture. . . We agree with the district court and find that § 1591(a)(2) targets those who participate in sex trafficking; it does not target soccer players who turn a blind eye to the source of their financial sponsorship.

*Afyare*, 632 F. App'x at 286.

The only parties alleged to have affirmatively participated in Plaintiff's sex trafficking are the Identified Kik Users.  (Compl. ¶¶ 33–39.)  The Complaint is devoid of any facts to

suggest that Kik participated in a sex trafficking venture or took any affirmative acts to further Plaintiff's alleged sex trafficking.  In fact, Plaintiff's claim against Kik is based on passive conduct.  (*Id*. at ¶¶21–22, 26, 42.)  Such "negative acquiescence" does not, as a matter of law, constitute a violation of Section 1591.  *Afyare*, 632 F. App'x at 286.  And "participation in other activities engaged in by the sex traffickers that do not further the sex-trafficking aspect of their venture" is also insufficient.  *Geiss*, 383 F. Supp. 3d at 169; *Noble*, 335 F. Supp. 3d at 524 (denying claim where defendant's only alleged affirmative actions were "by virtue of his job responsibilities" at the Weinstein Company).  Because the Complaint contains nothing that shows that Kik overtly participated in sex trafficking, Plaintiff has not shown conduct that violates Section 1591 and Kik is immune from suit.  47 U.S.C. § 230(e)(5)(A).

### 3. Kik did not receive any benefits because of a sex trafficking venture.

Section 1591 also imposes a causal requirement for secondary liability: a defendant must also know that the alleged benefit that is received is "because of" the purported sex trafficking venture.  *Geiss*, 383 F. Supp. 3d 156, 169 (S.D.N.Y. 2019) ("there must be a causal relationship between affirmative conduct furthering the sex-trafficking venture and receipt of a benefit, with actual or, in the civil context, constructive knowledge of that causal relationship"); *Kolbek v. Twenty First Century Holiness Tabernacle Church, Inc.*, 2013 WL 6816174, at *16 (W.D. Ark. Dec. 24, 2013).  Plaintiff fails this test as well.  The Complaint asserts that Kik Messenger's user base grew because of Kik's purported failure to warn and institute sufficient measures to curtail child abuse and pornography occurring through Kik Messenger.  (Compl. ¶ 46.)  But this is not the same as alleging that the sex trafficking of Plaintiff caused Kik Messenger's user base to grow.  *See Kolbek*, 2013 WL 6816174, at *16 ("The fact that sexual abuse was committed by the ministry's leader and that members of the ministry had their expenses paid for through ministry funds is simply not sufficient to establish a violation of 18 U.S.C. § 1591.").

While the Complaint's purported facts allege that Kik knew about **previous**, **other** incidents of criminal activity connected to Kik Messenger, there are no facts plausibly demonstrating that the Identified Kik Users' alleged criminal activity with Plaintiff caused Kik Messenger's user base to grow and that Kik was aware of it.  Moreover, given the widely publicized news stories of instances of sex trafficking and child pornography that were purportedly connected to Kik Messenger (Compl. at ¶¶17, 20–23.), the alleged facts suggest that Kik's user base grew despite Kik's Messenger's purported "notoriety," not because of it.  (*Id.* at ¶17.)  *Geiss*, 383 F. Supp. 3d 169–70 (dismissing claim where the allegations "suggest[ed] that H. Weinstein benefited TWC *in spite of* his alleged predations" (emphasis in original)).  The Complaint therefore has not alleged that Kik knowingly benefitted from Plaintiff's alleged sex trafficking as required by Section 1591.[4]

### C.     The Complaint Does Not State a Claim Under Section 1595.

Even if Kik wasn't immune under CDA § 230, the Complaint should still be dismissed for failing to plead all of the elements of a cause of action under 18 U.S.C. § 1595.  A victim of sex trafficking may sue either the primary "perpetrator" or a "beneficiary" of sex trafficking.  18 U.S.C. § 1595(a).  Under the latter theory, a plaintiff must allege: (1) the defendant "knowingly" benefitted, financially or "by receiving anything of value"; (2) from "participating in a venture," (3) that the "person [or entity] knew or should have known has engaged in an act in violation of this chapter."  *M.A. v. Wyndham Hotels & Resorts, Inc.*, 425 F. Supp. 3d 959 964 (S.D. Ohio

---

[4] Plaintiff's claim against MediaLab are predicated entirely on its alleged status as a successor in interest to Kik.  (Compl. ¶ 7.)  If Plaintiff's claim against Kik fails, so too does the claim against Medialab.  *TTT Foods Holding Co. LLC v. Namm*, 2017 WL 2901329, at *5 n.6 (S.D. Fla. May 19, 2017) ("[T]he theory of successor liability merely provides a plaintiff an alternative entity from whom to recover; it does not create a new cause of action against the successor which is independent of the underlying tort.").

2019).  Plaintiff fails to allege either that Kik "should have known" of her sex trafficking, or that Kik "participated in a venture" that engaged in a primary violation.

**1.    There are no facts indicating Kik should have known of Plaintiff's alleged sex trafficking.**

Even if the Court were to apply the lower "should have known" standard, the Complaint still fails to state a Section 1595 claim because there is not a single well pled fact in the Complaint to support an allegation that Kik was on notice of Plaintiff's alleged sex trafficking. While constructive rather than actual knowledge is sufficient under Section 1595 (in contrast with Section 1591), it is not enough to allege constructive knowledge of trafficking generally: a plaintiff still must allege facts showing the defendant should have known about what happened to the plaintiff in particular.  *A.B. v. Marriot Int'l, Inc.*, 2020 WL 1939678, at *17–18 (E.D. Penn. April 22, 2020).

In *A.B.*, the plaintiff defeated a motion to dismiss because she alleged facts that put the hotel on notice of what was happening to her.  2020 WL 1939678, at *17–18 (among other warning signs were (1) a "constant stream of male visitors" to her room; (2) the rooms "were littered with multiple broken objects, used condoms, and other sex paraphernalia"; (3) hotel staff "observed A.B. with signs of visible injury on more than on occasion"; and (4) "attacks on A.B. by her trafficker were constant and loud enough for hotel patrons and staff to hear").  The court noted that if A.B had "allege[d] only general conduct in the hotel industry regarding sex trafficking" it "may [have] agree[d]" with the defendant's motion to dismiss.  *Id.*  Similarly, in *M.A.*, the plaintiff stated a claim under Section 1595 because she not only included facts regarding the hotel industry's conduct toward sex trafficking generally, but "***also*** allege[d] facts specific to her own sex trafficking, including a number of signs she allege[d] should have alerted [hotel] staff to her situation."  425 F. Supp. 3d at 968.

Here, by contrast, the Complaint only alleges facts regarding general problems on Kik's platform.  There are no facts specific to Plaintiff indicating she reported the Identified Kik Users, that there was anything about the relevant accounts that should have alerted Kik, or that Kik had any other reason to be on notice of what was happening to Plaintiff.  In fact, the Complaint repeatedly states that as of May 2016, Kik had "***300 million registered users***," but does not indicate why or how Kik should have known about the 13 Identified Kik Users despite this enormous user base.  (Compl. ¶¶9, 46; *see also id*. at 40 n. 14 ("By September 2017, Kik had . . . about ***15 million monthly users***.").  It is implausible that out of all the users and messages transmitted daily on Kik Messenger, Kik had any reason to suspect misuse of Kik Messenger by thirteen unrelated and unremarkable users.  That Kik was aware of prior incidents of sex trafficking connected to Kik Messenger does not change this result.  *See Misko v. Speedway, LLC*, 2018 WL 2431638, at *10 (E.D. Mich. May 29, 2018) ("[G]eneral knowledge that a condition can materialize is not sufficient to create constructive knowledge of the existence of a particular condition at a specific time.").  Without specific facts that would "have alerted [Kik] to [Plaintiff's] situation," the Complaint cannot state a Section 1595 claim.  *See M.A*., 425 F. Supp. 3d at 968.

### 2.    Kik did not participate in a venture that engaged in sex trafficking.

Kik did not associate in any meaningful way with the Identified Kik Users much less participate in a venture with them.  Under a "beneficiary" theory, a plaintiff bringing a Section 1595 claim must show that the defendant "participat[ed] in a venture…[that] engaged in an act in violation of this chapter."  18 U.S.C. § 1595(a).  While Section 1591 expressly defines "participation in a venture" as "knowingly assisting, supporting, or facilitating a [primary sex trafficking] violation," the term is undefined in Section 1595.  18 U.S.C. § 1591(e)(4).  "In the absence of a direct association" between the primary violators and the beneficiary, the plaintiff

must "at least" allege facts indicating a "continuous [] relationship" between each member of the venture "such that it would appear [they] have established a pattern of conduct or could be said to have a tacit agreement." *See M.A. v. Wyndham Hotels & Resorts, Inc.*, 425 F. Supp. 3d 959, 970–71 (S.D. Ohio 2019) (analyzing Section 1595 claim).

There are no facts indicating that Kik had any kind of relationship or contact with the Identified Kik Users that comes close to any understanding of the term "venture."  In *M.A.*, for example, the court found a "venture" because the plaintiff alleged she saw the beneficiary defendant and her trafficker "exchanging high fives in the motel's parking lot while speaking about 'getting this thing going again.'"  *Id*.  Here, with no association between Kik and the primary violators, Plaintiff cannot show that the company was in any way involved in a venture that engaged in sex trafficking.

## V.      LEAVE TO AMEND

The Court may deny a plaintiff leave to amend if amendment would be futile.  *Krome Mining Partners v. United States*, 2009 WL 10700153, at *3–4 (S.D. Fla. Sept. 2, 2009) (denying leave to amend where Plaintiff "has not advanced any theory under which the Court could" rule in their favor); *see also* Fed. R. Civ. P. 15(a).  Moreover, unless there is "some substantive reason to believe that the requested amendment will not be futile, Rule 15(a) does not require that non-futility be assumed and leave to amend granted."  *Krome Mining Partners*, 2009 WL 10700153, at *3.

Here, there is no reason to believe that Plaintiff could present a viable complaint given leave to amend.  The Complaint's entire theory of liability is premised on allegations that Kik was generally aware of the fact that predators used Kik Messenger.  (*e.g.,* Compl. ¶21.) As this theory of liability is completely foreclosed by CDA § 230, Plaintiff would need to entirely change the premise of the Complaint, and, instead, allege that Kik had actual knowledge and

direct involvement in sex trafficking.  Not only would these allegations be false, Defendants candidly doubt that Plaintiff would have a Rule 11 basis for accusing Kik of such severe, criminal misconduct given that she failed to make such allegations in the 43 page Complaint. The Court should therefore not immediately grant leave to amend without further inquiry and instead should require Plaintiff to show cause before allowing another complaint.  *See Krome Mining Partners*, 2009 WL 10700153, at *3 (denying leave to amend where plaintiff was unable to show that amendment would not be futile); *see also Cancer Ctr. Assocs. for Research & Excellence, Inc. v. Phila. Ins. Cos.*, 2015 WL 2235347, at *1 (E.D. Cal. May 12, 2015) (plaintiff required "to show cause in writing" for leave to amend where it "had not alleged a fact pattern that could plausibly support" its claim and "had not presented any argument suggesting how it could modify its factual allegations upon amendment").

## VI.  CONCLUSION

For the reasons discussed, the Court should dismiss the Complaint.

Dated: June 12, 2020      Respectfully submitted,

By: */s/ Michael Rhodes*
MICHAEL RHODES
Admitted *pro hoc vice*
California Bar No. 116127

David Houska, Esq.
Admitted *pro hoc vice*
California Bar No. 259918
Cooley LLP
101 California Street, 5th Floor
San Francisco, CA 94111-5800
Tel. (415) 693-2181
rhodesmg@cooley.com
dhouska@cooley.com
*Attorneys for Defendants*

Nicole Atkinson
Primary: natkinson@gunster.com
Secondary: mmargolese@gunster.com

19

Secondary: eservice@gunster.com
**GUNSTER, YOAKLEY & STEWART, P. A.**
777 South Flagler Drive, Suite 500 East
West Palm Beach, FL 33401
Telephone: 561-655-1980
Facsimile: 561-655-5677
*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on June 12, 2020, a true and correct copy of the foregoing was served by email on counsel of record identified in the Service List below.

By: */s/ Nicole K. Atkinson*
NICOLE K. ATKINSON

## SERVICE LIST

Bruce Prober, Esq.
The Law Offices of Bruce Prober, P.A.
330 N. Andrews Ave., Suite 450
Fort Lauderdale, FL 33301
Tel. (954) 816-1260
Fax (954) 333-1505
bprober@proberlaw.com
*Attorney for Plaintiff*