UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 20-60702-CIV-SINGHAL

JANE DOE, a minor

v.

KIK INTERACTIVE, INC., a Canadian corporation, and
MEDIALAB.AI INC., a Delaware corporation,

Defendants.

_____/

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO
DISMISS COMPLAINT AND INCORPORATED MEMORANDUM OF LAW [DE 24]
AND INCORPORATED  MEMORANDUM OF LAW**

20-60702-CIV-SINGHAL

# <u>TABLE OF CONTENTS</u>

LEGAL STANDARD IN EVALUATING A MOTION TO DISMISS  UNDER FED. R. CIV. P. 12(b)(6) ………………………………………………………………………………1

I.      INTRODUCTION ……………………………………………………………2

II.     ISSUE ……………………………………………………………………..3

III.    BACKGROUND ……………………………………………………………3

A.      47 U.S.C. §230(5)  and FOSTA rescinds the interactive computer service providers' immunity against civil actions brought by victims of sex trafficking. Knowledge of sex trafficking as to specific victim is not required under 47 U.S.C. §230(5), FOSTA and 18 U.S.C. §1591. ……………………………………………………3

B.      Kik Messenger is not a "fun" application. …………………………………..7

C.      In her Complaint Plaintiff explicitly alleged that Defendants were specifically aware of multiple instances when Kik Messenger was utilized by predators to sexually abuse and even kill children. …………………………………………………………...7

VI.     ARGUMENT …………………………………………………………..8

A.      Defendants are not immune under 47 U.S.C. §230(5). Put it differently, 47 U.S.C.§230(c)(1) immunity does not apply to Defendants. …………………………..8

1.      Kik and MediaLab are interactive computer service providers. …………………10

2.      Plaintiff seeks to hold Defendants liable not merely as the publisher of content supplied by third parties but as a participant in a sex trafficking venture under 18 U.S.C. § 1595(a) in violation of 18 U.S.C. §1591(a)(2) by benefiting, financially or by receiving anything of value from acts described in paragraph 18 U.S.C. § 1591(a)(1). …………………10

20-60702-CIV-SINGHAL

B.   The Complaint Sufficiently Alleges Violation of sections 1591(a)(2) and 1595 by Defendants. …………………………………………………………………………12

1. Pleading of "actual knowledge" is not required under 18 U.S.C. 1591(a)(2) when the civil remedy is sought pursuant to Trafficking Victims Protection Act (TVPA), 18 U.S.C. § 1595. There are sufficient allegations that Kik had constructive knowledge of Plaintiff's sex trafficking. …………………………………………………………………………...12

2. Kik participated in a sex trafficking venture within the meaning of 18 U.S.C. 1591(a)(2) when the civil remedy is sought under TPVA. …………………………………………16

3. Kik received benefits from sex trafficking venture within the meaning of 18 U.S.C. 1591(a)(2) when the civil remedy is sought under TPVA. ………………………………18

C. PLAINTIFF'S MOTION FOR LEAVE TO AMEND TO ADD ADDITIONAL CAUSES OF ACTION: NEGLIGENT FAILURE TO WARN AND STRICT LIABILITY FOR FAILURE TO WARN. …………………………………………………………………………………...20

20-60702-CIV-SINGHAL

COMES NOW, the Plaintiff, JANE DOE, by and through the undersigned counsel, and pursuant to Local Rule 7.1(c) files this her Response and Incorporated Memorandum of Law in opposition to Defendants Kik Interactive, Inc's (Kik) and  Medialab.Ai Inc's (Medialab)  Motion to Dismiss Complaint and Incorporated  Memorandum of Law, [DE 24] (Motion), and in support thereof states as follows:

## MEMORANDUM OF LAW
### LEGAL STANDARD IN EVALUATING A MOTION TO DISMISS UNDER FED. R. CIV. P. 12(b)(6)

1.      In reviewing the dismissal of a complaint under Fed. R. Civ. P. 12(b)(6) [the Court] must accept the allegations set forth in the complaint as true. Roe v. Aware Woman Center for Choice, Inc., 253 F.3d 678, 679 (11th Cir. 2001) See also St. Joseph's Hosp., Inc. v. Hospital Corp. of America, 795 F.2d 948, 953 (11th Cir. 1986) (In ruling on the motion to dismiss the district court must accept the well pled facts as true and resolve them in the light most favorable to the plaintiff.)

2.      Although authorized by the Federal Rules of Civil Procedure, the liberal rules as to the sufficiency of a complaint make it a rare case in which a motion on this ground should be granted. St. Joseph's Hosp., Inc. v. Hospital Corp. of America, 795 F.2d 948, 953 (11th Cir. 1986)

3.      In appraising the sufficiency of the complaint [the Court follows] the accepted rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.  St. Joseph's Hosp., Inc. v. Hospital Corp. of America, 795 F.2d 948, 953 (11th Cir. 1986) (citing Conley v. Gibson, 355 U.S. 41, 45 (1957)).

4.      The pleading must contain either direct allegations on every material point necessary to sustain a recovery on any legal theory, even though it may not be the theory suggested or intended by the pleader, or contain allegations from which an inference fairly may be drawn that evidence

20-60702-CIV-SINGHAL

on these material points will be introduced at trial. <u>St. Joseph's Hosp., Inc. v. Hospital Corp. of America</u>, 795 F.2d 948, 954 (11th Cir. 1986) (*citing* Wright & Miller, Federal Practice and Procedure: Civil § 1216 at 121-23).

5.       Federal Rule of Civil Procedure 8(a)(2) requires that a complaint provide "a short and plain statement of the claim showing that the pleader is entitled to relief. Rule 8's pleading standard "does not require detailed factual allegations, but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009), *citing* <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007).

6.       Moreover, the plausibility standard "calls for enough fact to raise a reasonable expectation that discovery will reveal evidence" of the defendant's liability. <u>Chaparro v. Carnival Corp</u>., 693 F.3d 1333, 1336 (11th Cir. 1337), *citing* <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 556  (2007)

7.       The Plaintiff is asking this honorable Court to deny Defendants' Motion for the following reasons:

## I.       INTRODUCTION

Plaintiff, a minor, brought an action under 47 U.S.C. §230(5) of the Communication Decency Act (CDA) enacted by Congress on April 11, 2018 and known as ALLOW STATES AND VICTIMS TO FIGHT ONLINE SEX TRAFFICKING ACT OF 2017 (FOSTA) against Defendants for damages she sustained as a result of being sex trafficked by gown man utilizing Kik Messenger.

In anticipation of arguments made by Defendants in their Motion, Plaintiff, in her Complaint, included relevant legal authority and credible information supporting every material element of her claim against Defendants including dedication an entire section of her complaint explaining why Defendants are not immune under CDA and FOSTA. Complaint ¶¶  27-32. As discussed below, Defendants assertion that "[since] the Complaint cannot show that Defendants

20-60702-CIV-SINGHAL

violated Section 1591, they are immune from this suit under 47 U.S.C. §230(5) " (Mt. at 3) flies in the face of the facts plead in the Complaint and the law contained therein. Furthermore, Defendants' claim that "online platform is immune from suit based on the actions of its users unless the site has **_knowingly_** and **_directly_** participated in a **_sex trafficking venture_**" (emphasis in the original) is not supported by existing law.

In their Motion, Defendants attempt to distinguish civil actions brought under 18 U.S.C. §1591 as a distinct and separate claims from those brought under 18 U.S.C. §1595 Trafficking Victims Protection Act (TVPA. As explained below, a civil TVPA action drastically alters the standard proof imposed by courts during criminal prosecution brought solely section 1591. Separating the two in the context of this Action is to disregard the courts' interpretation of TVPA and to hold the Plaintiff to a heightened criminal standard of proof unintended by FOSTA and is, therefore, improper. In her response the Plaintiff, therefore, property compounds the Defendants' challenges to her section 1591 claim challenges to her section 1595 claim as both are inseparable.

## II. ISSUE

This case represents an issue of first impression whether in order to civilly recover under 47 U.S.C. §230(5)(A) and 18 U.S.C. § 1595(a) a victim of sex trafficking must allege and prove an interactive computer service provider's knowledge of sexual abuse as to that specific victim. In light of authority cited here, the Plaintiff argues that she does not.

The Defendants' Motion does not allege that the Plaintiff is not a sex trafficking victim.

## III.    BACKGROUND

**A.      47 U.S.C. §230(5)   and FOSTA rescinds the interactive computer service providers' immunity against civil actions brought by victims of sex trafficking. Knowledge of sex trafficking as to specific victim is not required under 47 U.S.C. §230(5), FOSTA and 18 U.S.C. §1591**.

20-60702-CIV-SINGHAL

On April 11, 2018 the Congress enacted ALLOW STATES AND VICTIMS TO FIGHT ONLINE SEX TRAFFICKING ACT OF 2017 "[t]o amend the Communications Act of 1934 to clarify that *section 230 of such Act does not prohibit the enforcement against providers and users of interactive computer services of Federal and State criminal and civil law relating to sexual exploitation of children or sex trafficking, and for other purposes*." PL 115-164. (Emphasis added.)

In the Section 2 of PL, the Congress stated that

> It is the sense of Congress that—
>
> (1) section 230 of the Communications Act of 1934 (47 U.S.C. 230; commonly known as the "Communications Decency Act of 1996") was never intended to provide legal protection to websites that unlawfully promote and facilitate prostitution and websites that facilitate traffickers in advertising the sale of unlawful sex acts with sex trafficking victims;
>
> (2) websites that promote and facilitate prostitution have been reckless in allowing the sale of sex trafficking victims and have done nothing to prevent the trafficking of children and victims of force, fraud, and coercion; and
>
> (3) clarification of such section is warranted to ensure that such section does not provide such protection to such websites.

Pursuant to PL 115-164 section 5 was added to 47 U.S.C. §230 which states the following:

No effect on sex trafficking law

Nothing in this section (other than subsection (c)(2)(A)) shall be construed to impair or limit--

> (A) any claim in a civil action brought under section 1595 of Title 18, if the conduct underlying the claim constitutes a violation of section 1591 of that title;
>
> (B) any charge in a criminal prosecution brought under State law if the conduct underlying the charge would constitute a violation of section 1591 of Title 18; or
>
> (C) any charge in a criminal prosecution brought under State law if the conduct underlying the charge would constitute a violation of section 2421A of Title 18, and promotion or facilitation of prostitution is illegal in the jurisdiction where the defendant's promotion or facilitation of prostitution was targeted.

20-60702-CIV-SINGHAL

By enacting section 5 of 47 U.S.C. §230, the Congress has rescinded the near-categorical immunity interactive computer service providers and access software providers enjoyed against civil claims from sex trafficking victims. <u>See</u> 47 U.S.C.§230(c)(1) for immunity language ("No provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider.")

The Defendants, relying on the House Report 115-572 mentioning Backpage and a misleading citation from H.R. REP. 115-572 at 5, argue that "to pierce immunity, 'general knowledge that sex trafficking occurs on a website will not suffice as the knowledge element must be proven as to a specific victim.'" Motion at 4, citing H.R. Rep. No. 115-572, at 5.

The argument that the knowledge element must be proven as to a specific victim for FOSTA to apply is not supported by exiting law. In fact, one of the reasons for FOSTA's enactment was the prosecutors' inability to prove an interactive computer service provider's knowledge as to specific victim under pre-FOSTA 18 U.S.C. S 1591. The misleading citation that "general knowledge that sex trafficking occurs on a website will not suffice as the knowledge element must be proven as to a specific victim" in a proper and compete context has an entirely different meaning:

> Importantly, current federal criminal law, which is unaffected by the CDA, presently lacks proper prosecutorial tools to combat these websites. Though under 18 U.S.C. S 1591, a website may be held criminally liable for knowingly advertising sex trafficking, this knowledge standard is difficult to prove beyond a reasonable doubt. This is so because online advertisements rarely, if ever, indicate that sex trafficking is involved. The advertisements neither directly nor implicitly state that force, fraud, or coercion was used against the victim, nor do they say that the person depicted being prostituted is actually under the age of 18. Because these indicia of knowledge of criminality are typically lacking in the advertisements, federal prosecutors usually cannot demonstrate beyond a reasonable doubt that the website operators knew that the advertisements involved sex trafficking. *Further, general knowledge that sex trafficking occurs on a website will not suffice as the knowledge element must be proven as to a specific*

20-60702-CIV-SINGHAL

> *victim*. Moreover, sex trafficking cases are often difficult to prosecute because the victims are often uncooperative due to the traumatic effects of having been trafficked, may have issues with illegal substances, and may sometimes appear unsympathetic to juries. *A new statute [meaning FOSTA] that instead targets promotion and facilitation of prostitution is far more useful to prosecutors*. Prostitution and sex trafficking are inextricably linked, and where prostitution is legalized or tolerated, there is a greater demand for human trafficking victims and nearly always an increase in the number of women and children trafficked into commercial sex slavery. H.R. REP. 115-572, 5-6 (Emphasis added.) [Ex. A]

Clearly, FOSTA was enacted to circumvent the "actual knowledge" requirement in "vigorous criminal enforcement against all bad-actor websites, not just Backpage.com", H.R. REP. 115-572, 6, and to "amend the Communications Act of 1934 to clarify that section 230 of such Act does not prohibit the enforcement against providers and users of interactive computer services of Federal and State criminal and civil law relating to sexual exploitation of children or sex trafficking, and for other purposes." PL 115-164. The Congress went through pains of imposing civil liability on specific users and providers of interactive computer services understanding the internet's realities. If the Congressional intent was to require proof of provider's specific knowledge as to each victim of sex trafficking as a prerequisite to civil recovery under 18 U.S.C. §1591, instead of saying "websites . . .have been *reckless* in allowing the sale of sex trafficking victims*"* it would have said "websites . . . have *intentionally* allowed the sale of sex trafficking victims." All that is required under FOSTA is the provider's participation in a venture in violation of 18 U.S.C. §1591(a)(2) by benefiting, financially or by receiving anything of value from acts described in paragraph 18 U.S.C. §1591(a)(1). See 18 U.S.C. § 1595(a). Interpreting FOSTA as requiring a proof  of knowledge as to a specific victim is patently unreasonable. Specific knowledge requirement would be  fatal to a victim of sex trafficking ability to recover under FOSTA. Websites like Backpage and Kik have hundreds of millions of users and millions of victims. Specific knowledge in a

20-60702-CIV-SINGHAL

magnitude such as this one is impossible. All that must be proven against a provider computer services to satisfy the knowledge element is constructive knowledge of the sex trafficking venture and failure to combat a known problem. "There is no actual knowledge requirement in § 1595 with respect to the sex trafficking venture." <u>H.H. v. G6 Hosp</u>., LLC, No. 2:19-CV-755, 2019 WL 6682152, at *2 (S.D. Ohio Dec. 6, 2019)

**B.        Kik Messenger is not a "fun" application.**

In their Motion, Defendants alleged that  the Plaintiff, in her Complaint, described Kik Messenger as "fun and easy-to-use messenger application (Compl. ¶¶ 6, 8.)" Motion at 5. Perhaps Defendants were responding to some other complaint, since nowhere in her Complaint does the Plaintiff refer to the tool of her abuse as "fun." The rest of the allegations contained in the "Kik Messenger" section of the Motion are slogans and statistics widely publicized by Defendants.

**C.        In her Complaint Plaintiff explicitly alleged that Defendants were specifically aware of multiple instances when Kik Messenger was utilized by predators to sexually abuse and even kill children.**

Defendants' claim that "Plaintiff does not allege that she reported or blocked the Identified Kik Users or any other facts that might have put Kik on notice of what was happening to her [and that] the Complaint [only] alleges Kik was *generally aware*, through public reporting, that Kik Messenger was *sometimes* used by predators to contact and groom victims", (emphasis added), are both misplaced and misleading.

The Plaintiff reiterates, as discussed below, that specific knowledge on the part of the provider or blocking and reporting of the offenders on the Plaintiff's part are not required or needed for a sex trafficking victim's civil recovery  under 18 U.S.C. § 1595 against an interactive computer service provider.

20-60702-CIV-SINGHAL

Defendants' attempt to convince the Court that they only "*generally aware"* that Kik Messenger  is routinely used by predators to sexually exploit children is an abandonment of  all reality and honesty. A plain meaning of "general" is not specific, exact, or detailed. In her Complaint, section titled *Kik Interactive's and Medialab's Knowledge that Kik is Widely Used by Sex Offenders to Commit Acts of Violence Against Children*[], the Plaintiff meticulously outlined articles from American on foreign press addressing victimization of children using Kik. Each article cited by the Plaintiff is addressing a crime committed against a specific, exact and detailed child by a specific, exact and detailed predator. Kik, in response to CBS News documentary *Killer App*, detailing the murder of a 13-year-old Nicole Lovell where the adult killer used Kik Messenger to lure the victim out of her home, made a formal statement acknowledging that the victim "suffered a terrible tragedy" and promising to take steps to make all Kik Messenger users to feel safe. Complaint, ¶¶ 15 – 24. The companies of an advanced technological know-how and international presence such Defendants cannot claim only "general awareness" of a huge child abuse problem plaguing Kik Messenger without offending the Court's sensibilities.

## VI.    ARGUMENT

**A.     Defendants are not immune under 47 U.S.C. §230(5). Put it differently, 47 U.S.C.§230(c)(1) immunity does not apply to Defendants.**

The Plaintiff incorporates the argument and legal authority from III, A of this Response and in addition states the following. This is the action where a victim of sex trafficking is suing interactive computer service providers whose computer platform promotes and facilitates sexual abuse and who have been reckless in allowing the sale of sex trafficking victims and have done nothing to prevent the trafficking of children and victims of force, fraud, and coercion. There is no immunity running to interactive computer service providers from these types of action. All case law cited by Defendants in this section is pre-FOSTA and is, therefore, inapplicable. Defendants

20-60702-CIV-SINGHAL

reliance on <u>Roca Labs, Inc. v. Consumer Opinion Corp</u>., 140 F. Supp. 3d 1311 (M.D. Fla. 2015) that they are immunity from Plaintiff action is not well-founded. <u>Roca Labs</u>, a pre-FOSTA case was a case where a business brought action against operator of consumer review website alleging numerous claims, including violation of the Florida Deceptive and Unfair Trade Practices Act (FDUTPA), tortious interference with a contractual relationship, tortious interference with a prospective economic relationship, and defamation. <u>Id</u>. at 1314. In <u>Roca Labs</u>, the website claimed immunity under 47 U.S.C. §230 arguing that it was not an information content provider. The immunity was rightly imposed. <u>Roca Labs</u>, a purely business litigation pre-FOSTA opinion, is wholly irrelevant to the present action as it does not address immunity or lack thereof under FOSTA and does not involve allegations of sex trafficking and a service provider's participation in a sex trafficking venture.

The so-called elements of 47 U.S.C. §230, a term made up by the Defendants: (1) the defendant is an online service provider; (2) the cause of action treats the defendant as the publisher or speaker of the content in question; and (3) someone other than the defendant provided or created the content at issue in the action, are inapplicable in interactive computer service provider's immunity determination under FOSTA where a provider is held liable for content generated by third parties.

To put simply, when a sex trafficking victim brings a FOSTA action against an interactive computer service provider, 47 U.S.C.§230(c)(1) immunity does not apply.

Assuming, *arguendo* <u>only</u>, that that Defendants are entitled to 47 U.S.C.§230(c)(1) immunity. The immunity Defendants are claiming is only from liability, not the suit. <u>Gen. Steel Domestic Sales, L.L.C. v. Chumley</u>, 840 F.3d 1178, 1181, 1182 (10th Cir. 2016) ("Section 230 of the CDA provides immunity only from liability, not suit. […] [The Court was] hesitant to extend

20-60702-CIV-SINGHAL

immunity from suit to a private party without a statutory basis. Immunity from suit is a benefit typically only reserved for governmental officials.")

**1.      Kik and MediaLab are interactive computer service providers.**

No response is needed as all parties are in agreement that for the purposes of this action Kik is an interactive service provider. It is also the Plaintiff's position that current Kik Messenger's owner and operator, Defendant MediaLab is too  an interactive service provider. Complaint, ¶ 32. Defendants' Motion does not argue otherwise.

**2.      Plaintiff seeks to hold Defendants liable not merely as the publisher of content supplied by third parties but as a participant in a sex trafficking venture under 18 U.S.C. § 1595(a) in violation of 18 U.S.C. §1591(a)(2) by benefiting, financially or by receiving anything of value from acts described in paragraph 18 U.S.C. § 1591(a)(1).**

The core of the Plaintiff's action is not to hold Defendants liable as merely the publisher of content supplied by third parties but to hold Kik and its successor in interest, liable for damages she sustained because of Kik's participation in a sex trafficking venture under 18 U.S.C. § 1595(a) in violation of 18 U.S.C. §1591(a)(2) by benefiting, financially or by receiving anything of value from acts described in paragraph 18 U.S.C. § 1591(a)(1). The Complaint is crystal clear regarding the Plaintiff's theory of liability. Complaint, ¶¶ 42 – 48.

In their gaslighting quest to convince the Court otherwise, Defendants rely on: <u>Mezey v. Twitter, Inc</u>., 2018 WL 5306769, at *1–2 (S.D. Fla. July 19, 2018) (Plaintiff sued Twitter under various theories of liability alleging that Twitter unlawfully suspended his Twitter account. Twitter moved to dismiss arguing 47 U.S.C. § 230(c)(1) immunity. No FOSTA issues involved or addressed.), <u>Herrick v. Grindr, LLC</u>, 306 F. Supp. 3d 579, 588–92 (S.D.N.Y. 2018) (A former Grindr user, whose former boyfriend impersonated him on web-based dating application, brought action against Grindr, alleging products liability, negligent design, promissory estoppel, fraud, and

20-60702-CIV-SINGHAL

copyright infringement. No FOSTA issues involved or addressed.), <u>McMillan v. Amazon.com, Inc</u>., 433 F.Supp.3d 1034, 1038 (S.D. 2020) (Plaintiff filed an action against Amazon alleging (1) strict liability for design defect; (2) strict liability for marketing defect; (3) breach of implied warranty; (4) negligence; and (5) gross negligence. No FOSTA issues involved or addressed.)

 In <u>Gonzalez v. Google</u>, Inc., 282 F. Supp. 3d 1150, 1151 (N.D. Cal. 2017), family members of deceased victim of terrorist attack sued Google for knowingly providing material support to ISIS in the form of its YouTube platform claiming that ISIS has used YouTube as a tool to commit terrorism. According to Plaintiffs, Google's material support was a proximate cause of Gonzalez's death. The family members alleged that Google directly contributing to ISIS's unlawful activities by "conspiring with ISIS", providing material support to terrorists and sharing advertising revenue with ISIS. The family, who sued under  Google under Justice Against Sponsors of Terrorism Act (JASTA), was unable to "clearly state their theory" of how JUSTA repealed 47 U.S.C. § 230(c)(1) immunity. <u>Id</u>. at 1158. <u>Gonzalez</u> is not even remotely analogous to the Plaintiff's action since it is not a FOSTA action nor is it an action where the Plaintiff is unable to "clearly state" how FOSTA repeals Defendants' 47 U.S.C. § 230(c)(1) immunity. Furthermore, Google, unlike Kik, never acknowledged that YouTube has a "terrorist problem", was never told by the press and the law enforcement agencies from around the world that YouTube is "the terrorists' paradise" and finally YouTube was not used to lure the terrorist victims from their homes to the place where they were murdered, kidnapped, assaulted and/or sexually exploited.

 Defendants' "directly on point" <u>Doe v. MySpace, Inc</u>., 528 F.3d 413, 420 (5th Cir. 2008) is a pre-FOSTA case where a mother of the victim, brought a state court action against MySpace for negligence in failing to take sufficient steps to prevent their 13-year-old daughter from lying about her age in order to create personal profile on this web-based social network, which ultimately led to her being contacted by, agreeing to meet, and being sexually assaulted by alleged predator.

20-60702-CIV-SINGHAL

The mater was ultimately removed to a federal court where MySpace asserted 47 U.S.C. § 230(c)(1) immunity which was ultimately granted. The enormous and glaring difference between MySpace and the case at bar is that Plaintiff in MySpace grounded her action in a state negligence for "failure to implement measures that would have prevented Julie Doe from communicating with [the predator], Id. at 420, not in federal FOSTA which was not yet enacted or TVPA. Moreover Plaintiff's in the case at bar assertion that Kik and MediaLab failed to "implement policies sufficient to combat a known problem" are plead as a part of Defendants' conduct in violation of 18 U.S.C. §1591(a)(2) where Defendants "knowingly participated in IDENTIFIED KIK USERS' venture in violation of 18 U.S.C. §1591 by benefiting from, and knowingly facilitating (by not implement policies sufficient to combat a known problem)." Complaint, ¶ 42.

Accordingly, Defendants are not immune against this lawsuit under 47 U.S.C. §230(5)

**B.    The Complaint Sufficiently Alleges Violation of sections 1591(a)(2) and 1595 by Defendants.**

In their Motion Defendants argue that "The Complaint Does Not Allege that Kik Violated Section 1591." Motion at 10. The crux of their argument is that the Complaint does not allege that Kik knew was happened specifically to the Plaintiff, that Kik "actually participated in a sex trafficking venture and that Kik knew it "was receiving benefit because of sex trafficking venture."

As discussed below, the Plaintiff sufficiently alleged all necessary elements of Section 18 U.S.C. 1591(a)(2) violations when civil recovery is sought under Trafficking Victims Protection Act (TVPA), 18 U.S.C. § 1595. Complaint, ¶¶ 40-48.

> 1.   **Pleading of "actual knowledge" is not required under 18 U.S.C. 1591(a)(2) when the civil remedy is sought pursuant to Trafficking Victims Protection Act (TVPA), 18 U.S.C. § 1595. There are sufficient allegations that Kik had constructive knowledge of Plaintiff's sex trafficking.**

20-60702-CIV-SINGHAL

The Defendants' claim that the Plaintiff's Complaint should be dismisses for not alleging that "Kik had actual knowledge of Plaintiff's interactions with the Identified Kik Users." Motion at 11. Kik's actual knowledge of Plaintiff's interactions with the Identified Kik Users is not a prerequisite to a civil recovery under 18 U.S.C. § 1595.

The issue of civil recovery under Trafficking Victims Protection Act (TVPA), 18 U.S.C. § 1595 arising out of 18 U.S.C. 1591(a)(2) conduct was addressed in Canosa v. Ziff, 2019 WL 498865, at *22–25 (S.D.N.Y. 2019). Opinions of sister district courts are held persuasive. Fishman & Tobin, Inc. v. Tropical Shipping & Const. Co., Ltd., 240 F.3d 956, 965 (11th Cir. 2001); Griffith v. Wal-Mart Stores East, L.P., 884 F.Supp.2d 1218, 1225 (N.D. Ala. 2012)

In Canosa, the Plaintiffs brought three TVPA (18 U.S.C. § 1595) claims: against Harvey Weinstein, the TWC (a corporate entity), and Robert Weinstein (Harvey's brother), Id. at 22. The Court sustained TVPA claims against Harvey as the victim  "has plausibly alleged that Harvey Weinstein, knowingly and in interstate commerce, enticed and or recruited her knowing that means of force, fraud, or a combination of the two, would be employed to cause her to engage in a commercial sex acts." Id. at 22. But granted dismissal of TVPA claim against Robert finding that "[the victim only] in general terms [alleged], that Robert Weinstein facilitated Weinstein's interstate and foreign travel…, knew of Weinstein's pattern or practice of assault . . . and was privy to multiple claims of assault alleged against Weinstein." Id. at 25. The Canosa court sustained a TVPA claim against the TWC.

The TWC's first ground for dismissal was "[t]he scenario raised in the Complaint is not akin to the perils of human sex trafficking the statute meant to address." Canosa at 23. Although Defendants in the case at bar are not arguing this, the Canosa court's rationale in denying this ground is critical to understanding the breadth of the TVPA:

20-60702-CIV-SINGHAL

> In construing the TVPA to reach conduct such as Weinstein's, this Court, as indicated above, finds persuasive Judge Sweet's construction of the statute in *Noble*, involving claims of similar conduct by Weinstein. Judge Sweet held that Section 1595, the remedial provision at issue, "requires broad interpretation." *Noble*, 335 F. Supp. 3d at 515 (citing *Peyton v. Rowe*, 391 U.S. 54, 65 (1968) (recognizing "canon of construction that remedial statutes should be liberally construed") ). *As he noted, Sections 1591 and 1595 use "[b]road, expansive language," and "Congress's use of the word 'whoever' and its repeated use of the word 'any' 'does not lend itself to restrictive interpretation.'" Id.* at 516 (quoting *United States v. Jungers*, 702 F.3d 1066, 1070 (8th Cir. 2013)).

<u>Canosa v. Ziff</u>, 2019 WL 498865, at *23 (S.D.N.Y. 2019) (Emphasis added.)

Defendants' "actual knowledge" argument completely eviscerates FOSTA and makes its enactment a complete waste of the Congress's time in the context of recovering against a website or an app developer. The Congress does not convene its legislative sessions to waste time. The "actual knowledge" argument flies in the face of the remedial Section 1595's broad interpretation requirement. Sections 1591 and 1595 broad use of "broad [and] expansive language" such as "whoever" and Congress repeated use of the word "any" does not lend itself to restrictive interpretation that in enacting FOSTA the Congress intended that only the interactive computer service providers with "direct knowledge" of a specific sex trafficking victim can be held civilly liable under  sections 1595 and 1591. The <u>Canosa</u> cited to opinion in <u>Noble v. Weinstein</u>, 335 F. Supp. 3d 504 (S.D.N.Y. 2018), same authority relied on by the Defendants in the case at bar, where the court dismissed the TVPA claim against Robert Weinstein for plaintiff's failure to plea sufficient facts that Robert Weinstein knew of Harvey's scheme in violation of 18 U.S.C. § 1591(a). There are important factual differences between <u>Noble</u>  and the case at bar, aside from <u>Noble</u> not being a FOSTA case, Plaintiff here has made very sufficient and detailed allegations of Defendants' constructive knowledge of Plaintiff's sex trafficking and there were are no allegations in <u>Noble</u> that the Weinstein Company had sexual predators other than Harvey.

20-60702-CIV-SINGHAL

In <u>H.H. v. G6 Hosp., LLC</u>, 2019 WL 6682152 (S.D. Ohio. 2019), plaintiff/victim, who alleged she was trafficked for sex from Motel 6 and Super 8 hotel locations, sought to hold these hotels liable under the TVPA, 18 U.S.C. § 1595(a), <u>Id</u>. at 2. Defendants, inter alia, argued that Plaintiff's complaint should be dismissed because she has not alleged Defendants had actual knowledge of or recklessly disregarded trafficking. <u>Id</u>. at 3. The <u>H.H.</u> court, finding that "there is no actual knowledge requirement in § 1595 with respect to the sex trafficking venture," <u>Id</u>. at 2, stated the following:

> A defendant cannot be liable under <u>18 U.S.C. § 1595(a)</u> unless it "knew or should have known" that the venture was engaged in sex trafficking. Several Defendants argue that Plaintiff's complaint should be dismissed because she has not alleged Defendants had actual knowledge of or recklessly disregarded H.H.'s trafficking. . . . As this Court held in its Order in *M.A.*, the plain text of <u>§ 1595(a)</u> makes clear that the standard under this section is a negligence standard of *constructive knowledge*. <u>2019 WL 4929297 at *7</u>.

<u>H.H. v. G6 Hosp., LLC</u>, 2019 WL 6682152, at *1 (S.D. Ohio. 2019) (Emphasis added.)

Although, the Victim in <u>HH</u> made some allegation "specific to her own sex trafficking", <u>Id</u>. at 3, the finding of the hotels' constructive knowledge turned on the fact that "H.H. has alleged, generally against each defendant hotel chain that the chains *failed to take action to prevent sex trafficking at their properties and their inattention in this regard enabled and contributed to the sex trafficking*." <u>Id</u>. at 3. (Emphasis added.) In making the finding of constructive knowledge requirement, the <u>H.H.</u> court relied on the line of cases stating that "failure to implement policies sufficient to combat a known problem in one's operations can rise to the level of willful blindness or negligence." <u>Id</u>. at 3

It must be kept that Defendants do not operate in a hospitality industry with concierges, maids, waiters and bartenders, or someone with ability to witness and remember the victim being

20-60702-CIV-SINGHAL

sex trafficked. The Defendants world operates in a virtual environment created and enabled by Defendants filled with very real predators hunting for their prey.

Based on <u>Canosa</u> and <u>H.H.</u> (supra) Plaintiff in her Complaint made detailed and sufficient allegations factual allegation of Defendants failing to take action to prevent sex trafficking at their platform and their inattention in this regard enabled and contributed to the Plaintiff's sex trafficking. Complaint, ¶¶ 15-26.

Accordingly, pleading of "actual knowledge" is not required under 18 U.S.C. 1591(a)(2) when the civil remedy is sought under Trafficking Victims Protection Act (TVPA), 18 U.S.C. § 1595.

**2. Kik participated in a sex trafficking venture within the meaning of 18 U.S.C. 1591(a)(2) when the civil remedy is sought under TPVA.**

Defendants here acknowledge that they can be held liable for participating in a sex venture defendant if they "knowingly assist, support or facilitate a violation of [a violation of subsection 18 U.S.C.A. § 1591 (a)(1).]"  Motion at 18. Both, Kik and MediaLab, just like defendants in <u>HH</u> (supra) contend that participation in a venture under section 1591 requires "overt participation in sex trafficking" or , put it differently, knowledge that Defendants' actions would assist the perpetrator. That is not the case when the Victim is seeking civil recovery under TPVA since "section 1595 includes a constructive knowledge requirement and applying the definition of 'participation in a venture' provided for in § 1591(e) to the requirements under § 1595 would void the 'known or should have known' language of § 1595." <u>H.H. v. G6 Hosp</u>., LLC, 6682152, at *4 (S.D. Ohio. 2019). "*Participation under § 1595 does not require actual knowledge of participation in the sex trafficking itself*." <u>Id</u>. at 4. (Emphasis added.) Just like the Victim in <u>HH</u> who alleged "[that] the defendants engaged in acts and omissions that were intended to support, facilitate,

20-60702-CIV-SINGHAL

harbor, and otherwise further the trafficker's sale and victimization of the Plaintiff for commercial

sexual exploitation", Id. at 4, the Victim here alleged that:

> 40. Plaintiff incorporates by reference all other paragraphs of this complaint as if fully set forth herein[.] (In ¶¶ 8 to 26 of her Complaint, the Plaintiff alleges specific means and methods used by Defendants to facilitate sexual trafficking of children).

> 42. KIK INTERNATIONAL and MediaLab as its successor in interest, knowingly participated in IDENTIFIED KIK USERS' venture in violation of 18 U.S.C. §1591 by benefiting from, and knowingly facilitating (by not implement policies sufficient to combat a known problem),  the venture in which IDENTIFIED KIK USERS used Kik Messenger in the interstate commerce to subject Jane Doe to sex trafficking.

> 43. KIK INTERNATIONAL and MediaLab as its successor in interest knew, or were in reckless disregard of the facts, that it was the practice of IDENTIFIED KIK USERS to utilize  Kik Messenger to furnish harmful materials such as pictures of men's genitalia to Jane Doe and subject Jane Doe to sex trafficking.

> 44. KIK INTERNATIONAL and MediaLab as its successor in interest had knowledge of multiple instances in which such acts were alleged against other adult Kik Messenger users, prior to July 2019.

> 45. Despite such knowledge, KIK INTERNATIONAL and MediaLab as its successor in interest continued to market Kik Messenger to underage users without a sufficient warning and implementation of sufficient polices to protect the underage users of Kik Messenger.

"Defendants need not have actual knowledge of the sex trafficking in order to have

participated in the sex trafficking venture for civil liability under the TVPA, otherwise the "should

have known" language in § 1595(a) would be meaningless." H.H. v. G6 Hosp., LLC, 2019 WL

6682152, at *5 (S.D. Ohio. 2019). See also Canosa v. Ziff, 2019 WL 498865, at *24 (S.D.N.Y.

2019) ("[A]s to the TWC Companies, the AC alleges [sufficiently] *specific means and methods*

*used by multiple company employees to facilitate Weinstein's sexual assaults* and to cover them

up afterwards.") (Emphasis added.)

20-60702-CIV-SINGHAL

Defendants' reliance on <u>United States v. Afyare</u>, 632 F. App'x 272, 283–86 (6th Cir. 2016) that "[Plaintiff must] prove that the defendant actually participated in a sex-trafficking venture and that Defendants "must make "some overt act that furthers the sex trafficking aspect of the venture" is misplaced as the exacting standard of "actual knowledge" and "overt act" employed in criminal prosecution under section in § 1591 is replaced by "constructive knowledge" standard when a civil recovery is sought under the TVPA.

Accordingly, the Plaintiff made sufficient allegations that Kik participated in a sex trafficking venture within the meaning of 18 U.S.C. 1591(a)(2) when the civil remedy is sought under TPVA.

### 3.  Kik received benefits from sex trafficking venture within the meaning of 18 U.S.C. 1591(a)(2) when the civil remedy is sought under TPVA.

In their Motion the  Defendants contend that the Plaintiff's "Complaint does not allege[] that Kik knowingly benefitted from Plaintiff's alleged sex trafficking as required by Section 1591.4." Motion at 20.

In her Complaint, the Plaintiff makes specific allegations that Defendant knowingly benefit financially from a sex trafficking venture:

> 46.    KIK INTERNATIONAL and MediaLab as its successor in interest, benefitted from the venture from such a venture. Due to KIK INTERNATIONAL's and/or MediaLab's failure to adequately warn the parents and institute substantive measure to curtail child abuse and manufacturing and distribution of obscene materials (including child pornography), between 2015 and March 31, 2020, Kik Messenger's subscribers' base reached approximately 300 million users.  Upon information and belief, as July 2019 Kik Messenger membership was still hundreds of millions of subscribers. Such an enormous subscribers base translates into benefits for KIK INTERNATIONAL in the form of selling third parties' apps, advertising revenues, selling of emojis, smileys and digital stickers, attracting outside investments and expanding the KIK brand and Kik Messenger. Moreover, through its membership and anonymity, Kik Messenger became a valuable asset with a great money making potential which was sold by KIK INTERACTIVE to MediaLab to each other's benefit.

20-60702-CIV-SINGHAL

> 47.     Furthermore, relying at least partially at Kik Messenger subscribers' base, KIK INTERNATIONAL and/or MediaLab launched a Minimum Viable Product ("MVP") that integrated Kin   within Kik Messenger. The MVP allowed users to use Kin to access tiered premium content, such as sticker packs, that were unlocked depending on the amount of Kin owned. Upon information and belief, KIK INTERNATIONAL believes that stickers are quite possibly a billion dollar industry. Upon information and belief, KIK INTERNATIONAL and/or MediaLab amie(s) to achieve financial result similar to a messaging company, Line which earned over $250 million in a year, solely from digital stickers. Upon information and belief, KIK INTERNATIONAL believes that roughly 20 percent of the thousands of TDE (token distribution event) purchasers linked their wallets to their Kik accounts, and participants applauded KIK INTERNATIONAL for implementing Kin into Kik online.

The benefit allegations in ¶¶ 46 and 47 of the Plaintiff's Complaint must be read in conjunction with the Defendants' advertising campaign directed almost exclusively at the teenagers, a target group which made Kim Messenger a "sex offenders' paradise." Complaint, ¶¶ 8-14. See H.H. v. G6 Hosp., LLC, 2019 WL 6682152, at *2 (S.D. Ohio. 2019) ("Defendant […] argues that 'knowing benefit' requires some kind of causal relationship between the rental of a hotel room and the perpetrator's sex trafficking scheme. *But § 1595(a) imposes no such requirement. The statutory language requires that Defendant knowingly benefit financially, not that the perpetrator compensate Defendant on account of the sex trafficking.*") (Internal citations omitted.) (Emphasis added.)

Alternatively, and just as valid, Kik's failure to warn the children, whom they specifically targeted and their parents made it more likely that Kik Massagers' membership will increase allowing Kik to create larger advertising revenue, on-line sales revenue from sticker and emojis and other financial benefits described in ¶¶ 46 and 47 of the Complaint. See Canosa v. Ziff, 2019 WL 498865, at *24 (S.D.N.Y. 2019) "[The TWC Companies argument   that they did not knowingly benefit from any alleged participation in a sex trafficking scheme ignores the Plaintiff's

20-60702-CIV-SINGHAL

allegations that by facilitating and covering up Weinstein's sexual assaults, TWC made Weinstein more likely to continue to work for TWC."

Accordingly, the Plaintiff made sufficient allegations that Kik received benefits from sex trafficking venture within the meaning of 18 U.S.C. 1591(a)(2) when the civil remedy is sought under TPVA.

**C. PLAINTIFF'S MOTION FOR LEAVE TO AMEND TO ADD ADDITIONAL CAUSES OF ACTION: NEGLIGENT FAILURE TO WARN AND STRICT LIABILITY FOR FAILURE TO WARN.**

Not only that the Plaintiff is asking the Court not to dismiss her Complaint, she is asking the Court that she be allowed to add two counts failure to warn the Plaintiff of the dangers of being sexually exploited associated with using the Kik Messenger one grounded in negligence and one grounded in strict liability. Specifically, the Plaintiff would allege that: Negligence is the failure to use reasonable care, which is the care that a reasonably careful designer, manufacturer and distributor of Kik Messenger or a Kik Messenger-like app would use under like circumstances. Reasonable care on the part of Defendants requires that Kik give an appropriate warning to the Plaintiff about particular risks of the dangers of being sexually exploited associated with using the Kik Messenger which Kik knew or should have known are involved in the reasonably foreseeable use of Kik Messenger. See Florida Standard Jury Instructions in Civil Cases, 403.10 NEGLIGENT FAILURE TO WARN. See also Ferayorni v. Hyundai Motor Co., 711 So. 2d 1167, 1172 (Fla. 4th DCA 1998), quoting Anderson v. Owens-Corning Fiberglas Corp., 810 P.2d 549, 558 (1991):

> Failure to warn in strict liability differs markedly from failure to warn in the negligence context. Negligence law in a failure-to-warn case requires a plaintiff to prove that a manufacturer or distributor did not warn of a particular risk for reasons which fell below the acceptable standard of care, i.e., what a reasonably prudent manufacturer would have known and warned about. Strict liability is not concerned with the standard of due care or the reasonableness of a manufacturer's conduct.

20-60702-CIV-SINGHAL

> The rules of strict liability require a plaintiff to prove only that the
> defendant did not adequately warn of a particular risk that was known
> or knowable in light of the generally recognized and prevailing best
> scientific and medical knowledge available at the time of manufacture
> and distribution.

The Plaintiff will proceed on negligence and strict liability theories against the Defendants seeking punitive damages. See Foman v. Davis, 371 U.S. 178, 182 (1962) ("Rule 15(a) declares that leave to amend 'shall be freely given when justice so requires'; this mandate is to be heeded. […]  If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits.")

State negligence to warn and strict liability for failure to warn are not barred by 47 U.S.C.§230(c)(1). See Doe v. Internet Brands, Inc., 824 F.3d 846, 850 (9th Cir. 2016) "[Where] Jane Doe attempts to hold Internet Brands liable for failing to warn her about information it obtained from an outside source about how third parties targeted and lured victims through Model Mayhem [47 U.S.C.§230(c)(1) immunity does not apply]. The duty to warn allegedly imposed by California law would not require Internet Brands to remove any user content or otherwise affect how it publishes or monitors such content." Even without the Federal question, the Court would have jurisdiction under 28 U.S.C. § 1332 since the amount in controversy exceeds $75,000 and Plaintiff is of different citizenship than all defendants.

**WHEREFORE**, Plaintiff, Jane Doe, respectfully requests that this Honorable Court enter an Order denying Defendants' Motion to Dismiss Plaintiff's Complaint and allowing the Plaintiff to add two state  Failure to Warn court, one grounded in negligence and one grounded in strict liability, to her Complaint.

**Dated July 25, 2020**

20-60702-CIV-SINGHAL

## <u>CERTIFICATE OF SERVICE</u>

I CERTIFY that on July 25, 2020, the foregoing was filed electronically through the Court's ECF filing system which will send a copy to counsel of record for the parties.

THE LAW OFFICES OF BRUCE PROBER, P.A.
Attorney for Plaintiff
330 N. Andrews Ave, Suite 450
Ft. Lauderdale, FL 33301
Telephone:     (954) 816-1260
Facsimile:      (954) 333-1505
Email: bprober@proberlaw.com
By:   /S/ Bruce Prober
Bruce Prober, Esq.
FBN: 895881

H.R. REP. 115-572(I), H.R. REP. 115-572, H.R. Rep. No. 572(I), 115TH Cong., 2ND Sess. 2018, 2018
WL 991972, 2018 U.S.C.C.A.N. 73 (Leg.Hist.)
P.L. 115-164, **73 ALLOW STATES AND VICTIMS TO FIGHT ONLINE SEX TRAFFICKING
ACT OF 2017

HOUSE REPORT NO. 115–572(I)

February 20, 2018

*1 Mr. Goodlatte, from the Committee on the Judiciary, submitted the following

REPORT

[To accompany H.R. 1865]
[Including cost estimate of the Congressional Budget Office]
The Committee on the Judiciary, to whom was referred the bill (H.R. 1865) to amend the Communications
Act of 1934 to clarify that section 230 of such Act does not prohibit the enforcement against providers
and users of interactive computer services of Federal and State criminal and civil law relating to sexual
exploitation of children or sex trafficking, and for other purposes, having considered the same, report
favorably thereon with an amendment and recommend that the bill as amended do pass.

TABULAR OR GRAPHIC MATERIAL SET FORTH AT THIS POINT IS NOT DISPLAYABLE
CONTENTS

Page

The Amendment 2

Purpose and Summary 3

Background and Need for the Legislation 3

Hearings 6

Committee Consideration 6

Committee Votes 6

Committee Oversight Findings 6

New Budget Authority and Tax Expenditures 6

Congressional Budget Office Cost Estimate 6

Ex. A

Duplication of Federal Programs 8

Disclosure of Directed Rule Makings 8

Performance Goals and Objectives 8

Advisory on Earmarks 8

Section-by-Section Analysis 8

Changes in Existing Law Made by the Bill, as Reported 10

Committee Jurisdiction Letters 14

**\*0 \*2** THE AMENDMENT

The amendment is as follows:

Strike all that follows after the enacting clause and insert the following:

SECTION 1. SHORT TITLE.

This Act may be cited as the "Allow States and Victims to Fight Online Sex Trafficking Act of 2017".

SEC. 2. SENSE OF CONGRESS.

It is the sense of Congress that–

(1) section 230 of the Communications Act of 1934 (47 U.S.C. 230; commonly known as the "Communications Decency Act of 1996") was never intended to provide legal protection to websites that unlawfully promote and facilitate prostitution and contribute to sex trafficking;

(2) websites that promote and facilitate prostitution have been reckless in allowing the sale of sex trafficking victims and have done nothing to prevent the trafficking of children and victims of force, fraud, and coercion; and

(3) clarification of such section is warranted to ensure that such section does not provide such protection to such websites.

SEC. 3. PROMOTION OF PROSTITUTION AND RECKLESS DISREGARD OF SEX TRAFFICKING.

(a) Promotion of Prostitution.–Chapter 117 of title 18, United States Code, is amended by inserting after

Ex. A

section 2421 the following:

"S 2421A. Promotion or facilitation of prostitution and reckless disregard of sex trafficking

"(a) In General.–Whoever uses or operates a facility or means of interstate or foreign commerce or attempts to do so with the intent to promote or facilitate the prostitution of another person shall be fined under this title, imprisoned for not more than 10 years, or both.

"(b) Aggravated Violation.–Whoever uses or operates a facility or means of interstate or foreign commerce with the intent to promote or facilitate the prostitution of another person and–

"(1) promotes or facilitates the prostitution of 5 or more persons; or

"(2) acts in reckless disregard of the fact that such conduct contributed to sex trafficking, in violation of 1591(a),

shall be fined under this title, imprisoned for not more than 25 years, or both.

"(c) Civil Recovery.–Any person injured by reason of a violation of section 2421A(b) may recover damages and reasonable attorneys' fees in an action before any appropriate United States district court. Consistent with section 230 of the Communications Act of 1934 (47 U.S.C. 230), a defendant may be held liable, under this subsection, where promotion or facilitation of prostitution activity includes responsibility for the creation or development of all or part of the information or content provided through any interactive computer service.

"(d) Mandatory Restitution.–Notwithstanding sections 3663 or 3663A and in addition to any other civil or criminal penalties authorized by law, the court shall order restitution for any offense under this section.

"(e) Affirmative Defense.–It shall be an affirmative defense to a charge of violating subsection (a) where the defendant proves, by a preponderance of the evidence, that the promotion or facilitation of prostitution is legal in the jurisdiction where the promotion or facilitation was targeted.".

(b) Table of Contents.–The table of contents for such chapter is amended by inserting after the item relating to section 2421 the following:

    "2421A. Promotion or facilitation of prostitution and reckless disregard of sex trafficking.".

Section 230(e) of the Communications Act of 1934 (47 U.S.C. 230(e)) is amended by adding at the end the following:

"(5) No effect on state laws conforming to 18 u.s.c. 1591(a) or 2421a.–Nothing in this section shall be construed to impair or limit any charge in a criminal prosecution brought under State law–

Ex. A

"(A) if the conduct underlying the charge constitutes a violation of section 2421A of title 18, United States Code, and promotion or facilitation of prostitution is illegal in the jurisdiction where the defendant's promotion or facilitation of prostitution was targeted; or

"(B) if the conduct underlying the charge constitutes a violation of section 1591(a) of title 18, United States Code.".

**\*3** SEC. 5. SAVINGS CLAUSE.

Nothing in this Act or the amendments made by this Act shall be construed to limit or preempt any civil action or criminal prosecution under Federal law or State law (including State statutory law and State common law) filed before or after the day before the date of enactment of this Act that was not limited or preempted by section 230 of the Communications Act of 1934 (47 U.S.C. 230), as such section was in effect on the day before the date of enactment of this Act.

**\*\*74** PURPOSE AND SUMMARY

H.R. 1865, the Allow States and Victims to Fight Online Sex Trafficking Act of 2017, is designed to combat online sex trafficking by providing new tools to law enforcement through a new federal criminal statute and by making it easier for states to prosecute criminal actor websites by amending section 230 of the Communications Decency Act, 47 U.S.C. S 230.

BACKGROUND AND NEED FOR THE LEGISLATION

Since the expansion of the Internet, a number of classified advertising websites have developed and are now a popular and widely-used alternative to traditional print advertising in newspapers. Sites like Craigslist, Backpage.com, and eBay Classifieds provide users with a forum for buying and selling goods and services to a broader audience on the web. These websites group advertisements by location and category, similar to print advertisements. The use of these websites has grown exponentially as Internet use increases. Unfortunately these websites, including online classified sites like Backpage.com, Eros, Massage Troll, and cityxguide, have also become one of the primary channels of sex trafficking. This is in part due to technological advances on the Internet that make information easily accessible and provide a forum for anonymity, which allows traffickers to post advertisements of minors for a world of customers to see with ease and security. Some websites have gone beyond merely hosting advertisements, however, and have purposely created platforms designed to facilitate prostitution and sex trafficking.

Because of protections provided to "interactive computer services" by the Communications Decency Act (CDA), 47 U.S.C. S 230, it has been challenging to hold bad-actor websites accountable criminally (at the state level) and civilly. Congress passed the CDA in 1996, in an attempt to "remove disincentives for the development and utilization of blocking and filtering technologies that empower parents to restrict their children's access to objectionable or inappropriate online material."[1] At the same time, Congress sought to "promote the continued development of the Internet and other interactive computer services and other interactive media."[2]

Ex. A

The CDA provides broad immunity for interactive computer services and states that no "provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider."[3] An interactive computer service is "any information service, system, or access software provider that provides or enables computer access by multiple users to a computer server, including specifically a service **75 *4 or system that provides access to the Internet and such systems operated or services offered by libraries or educational institutions."-[4] An information content provider is "any person or entity that is responsible, in whole or in part, for the creation or development of information provided through the Internet or any other interactive computer service."[5] Courts construing S 230(c)(1) frequently have employed a three-prong test that asks whether: (1) the online entity uses or provides an interactive computer service; (2) the entity is an information content provider with respect to the disputed activity or objectionable content; and (3) whether the plaintiff seeks to treat it as the "publisher or speaker" of information originating with a third party.[6] It has been uniformly held that Internet service providers are "interactive computer service" providers.[7] Courts have concluded that a Web site operator, search engine, or other entity was or was not a provider of an "interactive computer service" depending on whether there was a sufficient indication before the court that it "provided or enabled computer access by multiple users to a computer server" within the meaning of the definition found at S 230(f)(2).

The CDA further provides that:

Nothing in this section shall be construed to prevent any State from enforcing any State law that is consistent with this section. No cause of action may be brought and no liability may be imposed under any State or local law that is inconsistent with this section.

47 U.S.C. S 230(e)(3). It thus places limits on when states may enforce both criminal and civil laws. It only allows state laws to be enforced in cases in which they are deemed "consistent" with the CDA.

With respect to combatting websites promoting prostitution and facilitating sex trafficking, S 230 has complicated enforcement. In civil litigation, bad-actor websites have been able to successfully invoke this immunity provision despite engaging in actions that go far beyond publisher functions. In 2014, three minor Jane Does filed a civil suit in the U.S. District Court in Massachusetts under the Trafficking Victims Protection Reauthorization Act, alleging that that Backpage's platform, categories, and filters "assist[ed] in the crafting, placement, and promotion of illegal advertisements offering plaintiffs for sale." The District Court dismissed their Complaint, holding that S 230 of the CDA barred the lawsuit. The Second Circuit affirmed, concluding that although the plaintiffs "ha[d] made a persuasive case" that "Backpage has tailored its website to make sex trafficking easier," it nevertheless upheld the dismissal of the suit under S 230 on the grounds that it had not gone beyond being a publisher. Notably, the plaintiffs in this case chose only to argue Backpage was not a publisher; they did not **76 argue that Backpage was an information content provider and would therefore not be entitled to immunity.

*5 Subsequently, the Senate Permanent Subcommittee on Investigations launched a 20-month investigation into Backpage. It found that Backpage had knowingly concealed evidence of criminality by systematically editing its "Adult" ads–that is, Backpage knew it facilitated prostitution and child sex trafficking–and that it had been sold to its CEO Carl Ferrer through foreign shell companies. Backpage would automatically delete incriminating words, such as "amber alert," from sex ads prior to publication,

Ex. A

moderators then manually deleted incriminating language that filters missed, and the website coached its users on how to post "clean" ads to cover illegal transactions. Further, in July 2017, the Washington Post published a story revealing that a contractor for Backpage had been aggressively soliciting and creating sex-related ads, despite Backpage's repeated insistence that it had no role in the content of ads posted on its site. In sum, Backpage had engaged in a ruse, holding itself out to be a mere conduit, but in fact actively engaged in content creation and purposely concealing illegality in order to profit off of advertisements. There had been no criminal investigation up until the Senate investigation to uncover exactly what Backpage was doing, which is what this bill aims to remedy.

Further, courts have blocked states from enforcing state criminal laws on the grounds that the state laws were not consistent with the CDA. Backpage successfully invoked S 230 in federal-preemption challenges to state criminal laws in Washington, Tennessee, and New Jersey criminalizing the advertisement of minors for sex. A California state court also denied the government from proceeding against Backpage on pimping charges because it deemed the California statue "inconsistent" with the CDA.

Importantly, current federal criminal law, which is unaffected by the CDA, presently lacks proper prosecutorial tools to combat these websites. Though under 18 U.S.C. S 1591, a website may be held criminally liable for knowingly advertising sex trafficking, this knowledge standard is difficult to prove beyond a reasonable doubt. This is so because online advertisements rarely, if ever, indicate that sex trafficking is involved. The advertisements neither directly nor implicitly state that force, fraud, or coercion was used against the victim, nor do they say that the person depicted being prostituted is actually under the age of 18. Because these indicia of knowledge of criminality are typically lacking in the advertisements, federal prosecutors usually cannot demonstrate beyond a reasonable doubt that the website operators knew that the advertisements involved sex trafficking. Further, general knowledge that sex trafficking occurs on a website will not suffice as the knowledge element must be proven as to a specific victim. Moreover, sex trafficking cases are often difficult to prosecute because the victims are often uncooperative due to the traumatic effects of having been trafficked, may have issues with illegal substances, and may sometimes appear unsympathetic to juries. A new statute that instead targets promotion and facilitation of prostitution is far more useful to prosecutors. Prostitution and sex trafficking are inextricably linked, and where prostitution is legalized or tolerated, there is a greater demand for human trafficking victims and nearly always an increase in the number of women and children trafficked into commercial sex slavery.

**77 *6 H.R. 1865 will allow vigorous criminal enforcement against all bad-actor websites, not just Backpage.com, through the creation of a new federal law and by explicitly permitting states to enforce criminal laws that mirror this new federal law and current federal sex trafficking law. With this robust criminal enforcement, victims will have more opportunities to obtain restitution. Furthermore, this enforcement will also provide victims with information that will be sufficient to establish successful civil pleadings, by revealing the extent of content development in which these websites engage.

HEARINGS

The Committee on the Judiciary held a hearing on the intersection between the Communications Decency Act and online sex trafficking, the subject matter of H.R. 1865, on October 3, 2017. Testimony was received from the Honorable Chris Cox, Outside Counsel, NetChoice; Mr. Jeff Kosseff, Assistant

Ex. A

Professor, United States Naval Academy; Ms. Mary Leary, Professor of Law, Catholic University Columbus School of Law; and, Mr. Evan Engstrom, Executive Director, Engine.

## COMMITTEE CONSIDERATION

On December 12, 2017, the Committee met in open session and ordered the bill (H.R. 1865) favorably reported by voice vote, a quorum being present.

## COMMITTEE VOTES

In compliance with clause 3(b) of rule XIII of the Rules of the House of Representatives, the Committee advises that there were no recorded votes during the Committee's consideration of H.R. 1865.

## COMMITTEE OVERSIGHT FINDINGS

In compliance with clause 3(c)(1) of rule XIII of the Rules of the House of Representatives, the Committee advises that the findings and recommendations of the Committee, based on oversight activities under clause 2(b)(1) of rule X of the Rules of the House of Representatives, are incorporated in the descriptive portions of this report.

## NEW BUDGET AUTHORITY AND TAX EXPENDITURES

Clause 3(c)(2) of rule XIII of the Rules of the House of Representatives is inapplicable because this legislation does not provide new budgetary authority or increased tax expenditures.

## CONGRESSIONAL BUDGET OFFICE COST ESTIMATE

In compliance with clause 3(c)(3) of rule XIII of the Rules of the House of Representatives, the Committee sets forth, with respect to the bill, H.R. 2228, the **78 following estimate and comparison prepared by the Director of the Congressional Budget Office under section 402 of the Congressional Budget Act of 1974:

*7 U.S. Congress,
Congressional Budget Office,
Washington, DC, February 7, 2018.

Hon. Bob Goodlatte, Chairman,
Committee on the Judiciary,
House of Representatives, Washington, DC.
Dear Mr. Chairman: The Congressional Budget Office has prepared the enclosed cost estimate for H.R. 1865, the Allow States and Victims to Fight Online Sex Trafficking Act of 2017.

If you wish further details on this estimate, we will be pleased to provide them. The CBO staff contact is Mark Grabowicz, who can be reached at 226–2860.

WESTLAW   © 2020 Thomson Reuters. No claim to original U.S. Government Works.

Ex. A

Sincerely,

Keith Hall.

Enclosure.

cc: Honorable Jerrold Nadler

Ranking Member

TABULAR OR GRAPHIC MATERIAL SET FORTH AT THIS POINT IS NOT DISPLAYABLE

H.R. 1865–ALLOW STATES AND VICTIMS TO FIGHT ONLINE SEX TRAFFICKING ACT OF 2017

As ordered reported by the House Committee on the Judiciary on December 12, 2017

TABULAR OR GRAPHIC MATERIAL SET FORTH AT THIS POINT IS NOT DISPLAYABLE

H.R. 1865 would broaden the coverage of current laws against sex trafficking. As a result, the government might be able to pursue cases that it otherwise would not be able to prosecute. CBO expects that the bill would apply to a relatively small number of offenders, however, so any increase in costs for law enforcement, court proceedings, or prison operations would not be significant. Any such spending would be subject to the availability of appropriated funds.

Because those prosecuted and convicted under H.R. 1865 could be subject to criminal fines, the federal government might collect additional fines under the bill. Criminal fines are recorded as revenues, deposited in the Crime Victims Fund, and later spent without further appropriation action. CBO expects that any additional revenues and associated direct spending would not be significant because the bill would probably affect only a small number of cases.

Because enacting H.R. 1865 would affect direct spending and revenues, pay-as-you-go procedures apply. However, CBO estimates that any such effects would be insignificant in any year.

CBO estimates that enacting H.R. 1865 would not increase net direct spending or on-budget deficits in any of the four consecutive 10-year periods beginning in 2028.

H.R. 1865 contains no intergovernmental or private-sector mandates as defined in the Unfunded Mandates Reform Act.

On January 10, 2018, CBO transmitted a cost estimate for S. 1693, the Stop Enabling Sex Traffickers Act of 2017, as ordered reported by the Senate Committee on Commerce, Science, and Transportation on November 8, 2017. CBO's estimates of the budgetary effects of the two bills are identical.

**\*8** The CBO staff contact for this estimate is Mark Grabowicz. The estimate was approved by H. Samuel Papenfuss, Deputy Assistant Director for Budget Analysis.

WESTLAW   © 2020 Thomson Reuters. No claim to original U.S. Government Works.                    8

Ex. A

## DUPLICATION OF FEDERAL PROGRAMS

No provision of H.R. 1865 establishes or reauthorizes a program of the Federal government known to be duplicative of another Federal program, a program that was included in any report from the Government Accountability Office to Congress pursuant to section 21 of Public Law 111–139, or a program related to a program identified in the most recent Catalog of Federal Domestic Assistance.

## **79 DISCLOSURE OF DIRECTED RULE MAKINGS

The Committee finds that H.R. 1865 contains no directed rule making within the meaning of 5 U.S.C. S 551.

## PERFORMANCE GOALS AND OBJECTIVES

The Committee states that pursuant to clause 3(c)(4) of rule XIII of the Rules of the House of Representatives, H.R. 1865 combats online sex trafficking by providing new tools to law enforcement through a new federal criminal statute and by making it easier for states to prosecute criminal actor websites by amending section 230 of the Communications Decency Act.

## ADVISORY ON EARMARKS

In accordance with clause 9 of rule XXI of the Rules of the House of Representatives, H.R. 1865 does not contain any congressional earmarks, limited tax benefits, or limited tariff benefits as defined in clause 9(e), 9(f), or 9(g) of Rule XXI.

## SECTION-BY-SECTION ANALYSIS

Section 1. Short title. Section 1 sets forth the short title of the bill as the "Allow States and Victims to Fight Online Sex Trafficking Act of 2017."

Sec. 2. Section 2 states that it is the sense of Congress that:

(1) Section 230 of the Communications Act of 1934 was never intended to provide legal protection to websites that unlawfully promote and facilitate prostitution and websites that facilitate traffickers in advertising the sale of unlawful sex acts with sex trafficking victims;

(2) websites that promote and facilitate prostitution have been reckless in allowing the sale of sex trafficking victims and have done nothing to prevent the trafficking of children and victims of force, fraud, and coercion; and

(3) Clarification is warranted to ensure Section 230 does not provide liability protection to such websites described in (2)

Sec. 3. Promotion of Prostitution and Reckless Disregard of Sex Trafficking

Ex. A

Adds a new statute within the Mann Act, 18 U.S.C. S 2421A, to create a statutory maximum of 10 years imprisonment for the use or operation of an interstate facility with the intent to promote or facilitate the prostitution of another person. This promotion or facilitation must be deliberate; thus, the operator of a facility or **9 means of interstate or foreign commerce shall not be deemed to have the "intent to promote or facilitate the unlawful prostitution of another person," as that phrase is used in **80 sections 2421A(a) and 2421A(b), based on the appearance of material promoting unlawful prostitution of another person, where the material appears despite the operator's good faith efforts to moderate, remove, or restrict such material from appearing on or through the facility.

Creates as an aggravating factor: (1) the intent to promote or facilitate the trafficking of five or more persons; or (2) acting in reckless disregard of the fact that the conduct of using or operating a commercial facility contributed to sex trafficking (a violation of 18 U.S.C. S 1591(a)).

* These aggravating circumstances carry a fine and/or statutory maximum sentence of 25 years imprisonment. A website that promotes or facilitates prostitution will be liable under subsection (b)(2) where it operates in reckless disregard of the fact that its promotion or facilitation of prostitution is a factor, even if not the primary cause, that plays a part in producing sex trafficking.

* Creates a civil recovery mechanism by which injured persons may recover damages if they were a victim of a violation of subsection (b)(2).

* Provides for mandatory restitution for an offense under this section.

* States that it is an affirmative defense to a prosecution under subsection (a) and (b)(1) for the defendant to prove, by a preponderance of the evidence, that the promotion or facilitation of prostitution is legal in the jurisdiction where the promotion or facilitation was targeted. Many websites promoting prostitution are targeted to specific geographic areas, though the website itself may be accessible nationwide. Mere accessibility to a website with targeted advertisements from another locality where promotion or facilitation of prostitution is illegal, alone, will not undermine a defendant's successfully established affirmative defense.

Sec. 4. Communications Decency Act

Amends S 230(e) of the Communications Decency Act (47 U.S.C. S 230(3)) to allow states to enforce certain criminal laws without litigating the application of S 230. States that nothing in this section shall be construed to impair or limit any charge in a criminal prosecution brought under state law if:

(1) The conduct underlying the charge violates 18 U.S.C. S 2421A and prostitution is illegal where the defendant's promotion or facilitation of prostitution was targeted; or

(2) The conduct underlying the charge violates 18 U.S.C. S 1591(a).

Under S 230, a state criminal law may be enforced against an interactive computer service (i.e., a website) as long as it is "consistent" with S 230. This provision, however, has been problematic in cases in which

Ex. A

states have sought to enforce certain state criminal laws against websites. While the newly created law, and the federal sex **81 trafficking law, should both be considered consistent with S 230, as applied to certain bad-actor websites, in order to allow immediate and unfettered use of this provision, included is an explicit carve out to permit state criminal prosecutions. The language *10 used in the carve out is designed to ensure that interactive computer services are subject to one set of criminal laws, rather than a patchwork of various state laws. In order to qualify for this carve out, a state law's elements should mirror those in 2421A and 1591(a).

Sec. 5. Savings Clause

Clarifies that nothing in this Act shall be construed to limit or preempt any civil action or criminal prosecution under federal or state law that was not limited or preempted by S 230 of the Communications Decency Act.

## CHANGES IN EXISTING LAW MADE BY THE BILL, AS REPORTED

In compliance with clause 3(e) of rule XIII of the Rules of the House of Representatives, changes in existing law made by the bill, as reported, are shown as follows (existing law proposed to be omitted is enclosed in black brackets, new matter is printed in italic, and existing law in which no change is proposed is shown in roman):

## TITLE 18, UNITED STATES CODE

* * * * * * *
* * * * * * *

## CHAPTER 117–TRANSPORTATION FOR ILLEGAL SEXUAL ACTIVITY AND RELATED CRIMES

Sec.

2421A. Promotion or facilitation of prostitution and reckless disregard of sex trafficking.

* * * * * * *

S 2421A. Promotion or facilitation of prostitution and reckless disregard of sex trafficking

(a) In General.–Whoever uses or operates a facility or means of interstate or foreign commerce or attempts to do so with the intent to promote or facilitate the prostitution of another person shall be fined under this title, imprisoned for not more than 10 years, or both.

(b) Aggravated Violation.–Whoever uses or operates a facility or means of interstate or foreign commerce with the intent to promote or facilitate the prostitution of another person and–

(1) promotes or facilitates the prostitution of 5 or more persons; or

Ex. A

(2) acts in reckless disregard of the fact that such conduct contributed to sex trafficking, in violation of 1591(a),

shall be fined under this title, imprisoned for not more than 25 years, or both.

(c) Civil Recovery.–Any person injured by reason of a violation of section 2421A(b) may recover damages and reasonable attorneys' fees in an action before any appropriate United States district court. **11** Consistent with section 230 of the Communications Act of 1934 (47 U.S.C. 230), a defendant may be held liable, under this subsection, where promotion or facilitation of prostitution activity includes responsibility for the creation or development of all or part of the information or content provided through any interactive computer service.

(d) Mandatory Restitution.–Notwithstanding sections 3663 or 3663A and in addition to any other civil or criminal penalties authorized by law, the court shall order restitution for any offense under this section.

(e) Affirmative Defense.–It shall be an affirmative defense to a charge of violating subsection (a) where the defendant proves, by a preponderance of the evidence, that the promotion or facilitation of prostitution is legal in the jurisdiction where the promotion or facilitation was targeted.

\* \* \* \* \* \* \*

COMMUNICATIONS ACT OF 1934

\* \* \* \* \* \* \*

TITLE II–COMMON CARRIERS

\* \* \* \* \* \* \*

SEC. 230. PROTECTION FOR PRIVATE BLOCKING AND SCREENING OF OFFENSIVE MATERIAL.

(a) Findings.–The Congress finds the following:

(1) The rapidly developing array of Internet and other interactive computer services available to individual Americans represent an extraordinary advance in the availability of educational and informational resources to our citizens.

(2) These services offer users a great degree of control over the information that they receive, as well as the potential for even greater control in the future as technology develops.

(3) The Internet and other interactive computer services offer a forum for a true diversity of political discourse, unique opportunities for cultural development, and myriad avenues for intellectual activity.

(4) The Internet and other interactive computer services have flourished, to the benefit of all Americans,

Ex. A

with a minimum of government regulation.

(5) Increasingly Americans are relying on interactive media for a variety of political, educational, cultural, and entertainment services.

(b) Policy.–It is the policy of the United States–

(1) to promote the continued development of the Internet and other interactive computer services and other interactive media;

(2) to preserve the vibrant and competitive free market that presently exists for the Internet and other interactive computer services, unfettered by Federal or State regulation;

**\*12** (3) to encourage the development of technologies which maximize user control over what information is received by individuals, families, and schools who use the Internet and other interactive computer services;

(4) to remove disincentives for the development and utilization of blocking and filtering technologies that empower parents to restrict their children's access to objectionable or inappropriate online material; and

(5) to ensure vigorous enforcement of Federal criminal laws to deter and punish trafficking in obscenity, stalking, and harassment by means of computer.

(c) Protection for "Good Samaritan" Blocking and Screening of Offensive Material.–

(1) Treatment of publisher or speaker.–No provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider.

(2) Civil liability.–No provider or user of an interactive computer service shall be held liable on account of–

(A) any action voluntarily taken in good faith to restrict access to or availability of material that the provider or user considers to be obscene, lewd, lascivious, filthy, excessively violent, harassing, or otherwise objectionable, whether or not such material is constitutionally protected; or

(B) any action taken to enable or make available to information content providers or others the technical means to restrict access to material described in paragraph (1).

(d) Obligations of Interactive Computer Service.–A provider of interactive computer service shall, at the time of entering an agreement with a customer for the provision of interactive computer service and in a manner deemed appropriate by the provider, notify such customer that parental control protections (such as computer hardware, software, or filtering services) are commercially available that may assist the customer in limiting access to material that is harmful to minors. Such notice shall identify, or provide the customer with access to information identifying, current providers of such protections.

Ex. A

(e) Effect on Other Laws.–

(1) No effect on criminal law.–Nothing in this section shall be construed to impair the enforcement of section 223 or 231 of this Act, chapter 71 (relating to obscenity) or 110 (relating to sexual exploitation of children) of title 18, United States Code, or any other Federal criminal statute.

(2) No effect on intellectual property law.–Nothing in this section shall be construed to limit or expand any law pertaining to intellectual property.

(3) State law.–Nothing in this section shall be construed to prevent any State from enforcing any State law that is consistent with this section. No cause of action may be brought and no liability may be imposed under any State or local law that is inconsistent with this section.

(4) No effect on communications privacy law.–Nothing in this section shall be construed to limit the application of the **13** Electronic Communications Privacy Act of 1986 or any of the amendments made by such Act, or any similar State law.

(5) No effect on state laws conforming to 18 u.s.c. 1591(a) or 2421a.–Nothing in this section shall be construed to impair or limit any charge in a criminal prosecution brought under State law–

(A) if the conduct underlying the charge constitutes a violation of section 2421A of title 18, United States Code, and promotion or facilitation of prostitution is illegal in the jurisdiction where the defendant's promotion or facilitation of prostitution was targeted; or

(B) if the conduct underlying the charge constitutes a violation of section 1591(a) of title 18, United States Code.

(f) Definitions.–As used in this section:

(1) Internet.–The term "Internet" means the international computer network of both Federal and non-Federal interoperable packet switched data networks.

(2) Interactive computer service.–The term "interactive computer service" means any information service, system, or access software provider that provides or enables computer access by multiple users to a computer server, including specifically a service or system that provides access to the Internet and such systems operated or services offered by libraries or educational institutions.

(3) Information content provider.–The term "information content provider" means any person or entity that is responsible, in whole or in part, for the creation or development of information provided through the Internet or any other interactive computer service.

(4) Access software provider.–The term "access software provider" means a provider of software (including client or server software), or enabling tools that do any one or more of the following:

Ex. A

(A) filter, screen, allow, or disallow content;

(B) pick, choose, analyze, or digest content; or

(C) transmit, receive, display, forward, cache, search, subset, organize, reorganize, or translate content.

\* \* \* \* \* \* \*

TABULAR OR GRAPHIC MATERIAL SET FORTH AT THIS POINT IS NOT DISPLAYABLE

1 47 U.S.C. S 230(b)(4).

2 47 U.S.C. S 230(b)(1).

3 47 U.S.C. S 230(c)(1).

4 47 U.S.C. S 230(f)(2).

5 47 U.S.C. S 230(f)(3).

6 See Ken S. Myers, Wikimmunity: Fitting the Communications Decency Act to Wikipedia, 20 Harvard Journal of Law & Technology 163 (2006).

7 Noah v. AOL Time Warner, Inc., 261 F. Supp. 2d 532 (E.D. Va. 2003), summarily aff'd, 2004 WL 602711 (4th Cir. 2004).

H.R. REP. 115-572(I), H.R. REP. 115-572, H.R. Rep. No. 572(I), 115TH Cong., 2ND Sess. 2018, 2018 WL 991972, 2018 U.S.C.C.A.N. 73 (Leg.Hist.)

---

**End of Document**        © 2020 Thomson Reuters. No claim to original U.S. Government Works.

Ex. A