UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 20-60702-CIV-SINGHAL

JANE DOE, a minor,

      Plaintiff,

v.

KIK INTERACTIVE, INC., a Canadian corporation,
and MEDIALAB.AI INC., a Delaware corporation,

      Defendants.

_____/

## ORDER

**THIS CAUSE** is before the Court on Defendants' Motion to Dismiss (DE [24]).
Plaintiff, a minor proceeding pseudonymously, has filed a Complaint (DE [1]) seeking
damages from Defendants, Kik Interactive, Inc. and Medialab AI Inc.[1] under the
Trafficking Victims Protections Act ("TVPA"), 18 U.S.C. § 1595(a).  Defendants moved to
dismiss arguing they are immune from suit or alternatively, that Plaintiff has failed to state
a claim upon which relief can be granted.  Plaintiff has filed a memorandum in opposition
(DE [29]) and Defendant has filed its reply memorandum (DE [33]).  For the reasons set
forth below, Defendants' Motion to Dismiss (DE [24]) is granted.

    I.     <u>BACKGROUND</u>

Defendants own and operate a web-based interactive service known as Kik
Interactive or "Kik."  According to Plaintiff, Kik is marketed to teenagers and young adults
for purposes of sending messages to other users. (Compl. ¶ 25-26). The Complaint

---

[1] MediaLabs, Inc. acquired Kik Interactive on or around October 29, 2019 and is the current owner-operator
of the Kik Interactive service.

alleges multiple instances where adult users of Kik have used the service to contact and solicit sexual activity with minors, with some of those contacts resulting in death of the minors. (Compl. ¶ 15-23).  Plaintiff alleges that Defendants have knowledge that sexual predators use its service to prey on minors but have failed to provide any warnings or enact policies to protect minors from such abuses. (Compl. ¶ 45).

Plaintiff alleges that in July 2019 numerous adult male users of Kik ("Identified Kik Users") solicited her and convinced her to take and send them sexually graphic pictures of herself using Kik. (Compl. ¶ 15-23).  She also alleges these adult males sent her sexually explicit photographs via Kik.[2] (*Id.*)  Her father found the photographs on her cellphone and computer tablet and reported the incidents to the police. (*Id.*).  The cellphone and tablet were turned over to the Florida Department of Law Enforcement. (*Id.*).

Plaintiff filed suit under the civil remedy statute, Trafficking Victims Protection Act, 18 U.S.C. § 1595.  She alleges that Defendants are liable for damages for knowingly "participat[ing] in IDENTIFIED KIK USERS' venture in violation of 18 U.S.C. § 1591 by benefiting from, and knowingly facilitating (by not implementing policies sufficient to combat a known problem), the venture in which IDENTIFIED KIK USERS used Kik Messenger in the interstate commerce to subject Jane Doe to sex trafficking." (Compl. ¶ 42).  She also alleges Defendants "knew, or were in reckless disregard of the facts, that it was the practice of IDENTIFIED KIK USERS to utilize Kik Messenger to furnish harmful materials such as pictures of men's genitalia to Jane Doe and subject Jane Doe to sex trafficking . . . [but] continued to market Kik Messenger to underage users without a

_____

[2] For purposes of this motion the parties did not dispute that this conduct falls under the federal definition of "sex trafficking."

2

sufficient warning and implementation of sufficient polices to protect the underage users of Kik Messenger." (Compl. ¶ 43, 44).

Defendants move to dismiss on two grounds.  First, they argue immunity from suit pursuant to the Computer Decency Act ("CDA"), 47 U.S.C. § 230(a); second, for failure to state a claim under 18 U.S.C. § 1595(a).

II.    LEGAL STANDARDS

A.  Motion to Dismiss Standards.

At the pleading stage, a complaint must contain "a short and plain statement of the claim showing the [plaintiff] is entitled to relief."  Fed. R. Civ. P. 8(a).  Although Rule 8(a) does not require "detailed factual allegations," it does require "more than labels and conclusions"; a "formulaic recitation of the elements of a cause of action will not do*." Bell Atl. Corp v. Twombly*, 550 U.S. 544, 555 (2007).  To survive a motion to dismiss, "factual allegations must be enough to raise a right to relief above the speculative level" and must be sufficient "to state a claim for relief that is plausible on its face."  *Id.* at 555.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "The mere possibility the defendant acted unlawfully is insufficient to survive a motion to dismiss*." Sinaltrainal v. Coca-Cola Co.,* 578 F.3d 1252, 1261 (11th Cir. 2009), *abrogated on other grounds by Mohamad v. Palestinian Auth.*, 556 U.S. 449 (2012).

In considering a Rule 12(b)(6) motion to dismiss, the court's review is generally "limited to the four corners of the complaint."  *Wilchombe v. TeeVee Toons, Inc.*, 555 F.3d 949, 959 (11th Cir. 2009) (quoting *St. George v. Pinellas Cty.*, 285 F.3d 1334, 1337 (11th

Cir. 2002)).  In reviewing the complaint, the court must do so in the light most favorable to the plaintiff, and it must generally accept the plaintiff's well-pleaded facts as true.  *See Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984*); Am. United Life Ins. Co. v. Martinez*, 480 F.3d 1043, 1057 (11th Cir. 2007).  But "[c]onclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal." *Jackson v. Bellsouth Telecommunications*, 372 F.3d 1250, 1262 (11th Cir. 2004) (citation omitted); *see also Iqbal,* 129 S. Ct. at 1949 ("[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions").

B. Immunity Under the Communications Decency Act

Defendants argue that they are immune from suit under the Communications Decency Act ("CDA"), 47 U.S.C. § 230.  Section 230, entitled "Protection for private blocking and screening of offensive material," begins with a list of "Findings" and "Policy":

(a) **Findings**

The Congress finds the following:

(1) The rapidly developing array of Internet and other interactive computer services available to individual Americans represent an extraordinary advance in the availability of educational and informational resources to our citizens.

(2) These services offer users a great deal of control over the information that they receive, as well as the potential for even greater control in the future as technology develops.

(3) The internet and other interactive computer services offer a forum for a true diversity of public discourse, unique opportunities for cultural development, and myriad avenues for intellectual activity.

(4) The Internet and other interactive computer services have flourished, to the benefit of all Americans, with a minimum of governmental regulation.

4

(5) ncreasingly Americans are relying on interactive media for a variety of political, educational, cultural, and entertainment services.

(b) **Policy**

It is the policy of the United States –

(1) to promote the continued development of the Internet and other interactive computer services and other interactive media;

(2) to preserve the vibrant and competitive free market that presently exists for the Internet and other interactive computer services, unfettered by Federal or State regulation;

(3) to encourage the development of technologies which maximize user control over what information is received by individuals, families, and schools who use the Internet and other interactive computer services;

(4) to remove disincentives for the development and utilization of blocking and filtering technologies that empower parents to restrict their children's access to objectionable or inappropriate online material; and

(5) to ensure vigorous enforcement of Federal criminal laws to deter and punish trafficking in obscenity, stalking, and harassment by means of computer.

47 U.S.C. § 230(a) and (b).  In recognition of those stated findings and policies, subsection (c) of the CDA provides that "[n]o provider ... of an interactive computer service shall be treated as a publisher or speaker of any information provided by another information content provider."  47 U.S.C. § 230(c)(1).  This is the immunity provision relied upon by Defendants.  In addition to granting immunity to interactive service providers for content created by third parties, Congress also expressly preempted all state laws that are inconsistent with this immunity. 47 U.S.C. § 230(e)(3) ("No cause of action may be brought and no liability may be imposed under any State or local law that is inconsistent with this section.").

C.  <u>FOSTA Exception to Immunity</u>

In 2018, Congress enacted the Fight Online Sex Trafficking Act ("FOSTA") and removed sex trafficking from CDA immunity.  FOSTA provides that "[n]othing in this section (other than subsection (c)(2)(A)) shall be construed to impair or limit . . . any claim in a civil action under section 1595 of Title 18, if the conduct underlying the claim constitutes a violation of section 1591 of that title." 47 U.S.C. § 230(e)(5)(A).  This is the provision relied upon by Plaintiff.

D.  <u>Sex Trafficking Claims Under 18 U.S.C. §§ 1591, 1595</u>

FOSTA permits claims for civil damages to be made against interactive computer service providers under § 1595, if "the conduct underlying the claim constitutes a violation of section 1591." Section 1595 is the Civil Remedy provision of the Trafficking Victims Protection Act and provides as follows:

> An individual who is a victim of a violation of this chapter may bring a civil action against the perpetrator (or whoever knowingly benefits, financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in an act in violation of this chapter) in an appropriate district court of the United States and may recover damages and reasonable attorneys fees.

18 U.S.C. § 1595(a).  Section 1591(a) criminalizes certain conduct:

> (a) Whoever knowingly –
>
> (1) in or affecting interstate or foreign commerce . . . recruits, entices, harbors, transports, provides, obtains, advertises, maintains, patronizes, or solicits by any means a person; or

>> (2) benefits, financially or by receiving anything of value, from participation in a venture which has engaged in an act described in violation of paragraph (1),
>>
>> knowing, or except where the act constituting the violation of paragraph (1) is advertising, in reckless disregard of the fact, that means of force, threats of force, fraud, coercion described in subsection (e)(2), or any combination of such means will be used to cause the person to engage in a commercial sex act, or that the person has not attained the age of 18 years and will be caused to engage in a commercial sex act, will be punished as provided in subsection (b).

18 U.S.C. § 1591(a).  "The term 'participation in a venture' means knowingly assisting, supporting, or facilitating a violation of subsection (a)(1)."  18 U.S.C. § 1591(e)(4).[3]

## III.    MOTION TO DISMISS

Defendants move to dismiss the Complaint arguing they are entitled to immunity under the CDA, 47 U.S.C. § 230(c)(1).  The primary purpose of the CDA "was to protect children from sexually explicit internet content." *FTC v. LeadClick Media, LLC*, 838 F.3d 158, 173 (2d Cir. 2016) (citing 141 Cong. Rec. S1953 (daily ed. Feb. 1, 1995) (statement of Sen. Exon)). "Section 230, though – added as an amendment to the CDA bill – was enacted to maintain the robust nature of Internet communication and, accordingly, to keep government interference in the medium to a minimum." *Force v. Facebook, Inc.,* 934 F.3d 53, 63 (2d Cir. 2019), *cert. denied,* 206 L. Ed. 2d 936 (May 18, 2020) (quotations omitted). "Indeed, Congress stated in Section 230 that '[i]t is the policy of the United States – (1) to promote the continued development of the Internet and other interactive computer services and other interactive media; [and] (2) to preserve the vibrant and competitive

---

[3] The phrase "participation in a venture" is not defined in 18 U.S.C. § 1595.

free market that presently exists for the Internet and other interactive computer services, unfettered by Federal or State regulation.'" *Id.* (quoting 47 U.S.C. § 230(b)(1)-(2)). "Congress made a policy choice . . . not to deter harmful online speech through the separate route of imposing tort liability on companies that serve as intermediaries for other parties' potentially injurious messages." *Zeran v. Am. Online, Inc.,* 129 F.3d 327, 330–31 (4th Cir. 1997). The *Zeran* court succinctly explained the reasons behind the Congressional policy decision:

> Congress' purpose in providing the § 230 immunity was thus evident. Interactive computer services have millions of users. *See Reno v. ACLU,* 521 U.S. [884], __, 117 S. Ct. at 2334 (noting that at time of district court trial, "commercial online services had almost 12 million individual subscribers"). The amount of information communicated via interactive computer services is therefore staggering. The specter of tort liability in an area of such prolific speech would have an obvious chilling effect. It would be impossible for service providers to screen each of their millions of postings for possible problems. Faced with potential liability for each message republished by their services, interactive computer service providers might choose to severely restrict the number and type of messages posted. Congress considered the weight of the speech interests implicated and chose to immunize service providers to avoid any such restrictive effect.

*Id.* at 331.

"There are three elements to a claim of immunity under Section 230(c). The defendant must show that: "(1) [it] 'is a provider . . . of an interactive computer service, (2) the claim is based on information provided by another information content provider and (3) the claim would treat the defendant as the publisher or speaker of that information.'" *Herrick v. Grindr, LLC*, 306 F. Supp. 3d 579, 588 (S.D.N.Y. 2018), *aff'd,* 765 Fed. Appx. 586 (2d Cir. 2019), *cert. denied,* 140 S. Ct. 221 (2019) (quoting *LeadClick Media, LLC*, 838 F.3d at 173 (additional citations omitted)).  "The majority of federal circuits have

8

interpreted the CDA to establish broad 'federal immunity to any cause of action that would make service providers liable for information originating with a third-party user of the service.'" *Almeida v. Amazon.com*, *Inc.,* 456 F.3d 1316, 1321 (11th Cir. 2006) (*quoting Zeran,* 129 F.3d at 330.

Numerous courts have recognized CDA immunity in claims made against providers of interactive computer services arising from content produced by their users. For instance, a defamation claim against Google based upon posts made by a third-party user was dismissed due to immunity under the CDA. *Shuler v. Duke*, 2018 WL 2445685, at *10 (N.D. Ala. May 31, 2018), *aff'd,* 792 Fed. Appx. 697 (11th Cir. 2019).    *See also Mezey v. Twitter, Inc.*, 2018 WL 5306769 (S.D. Fla. Jul. 19, 2018) (CDA barred claim that defendant unlawfully suspended his Twitter account); *Herrick*, 306 F. Supp. 3d 579 (CDA barred claims against Grndr that arose from publication of an account that impersonated plaintiff); *McMillan v. Amazon.com, Inc.*, 433 F. Supp.3d 1034, 1045 (S.D. Tex. 2020) (CDA barred negligence action against Amazon arising from a failure to warn of dangers of a product sold on its site).  "In general, this section protects websites from liability for material posted on the website by someone else."  *Doe v. Internet Brands, Inc.,* 824 F.3d 846, 850 (9th Cir. 2016).  If not for the nature of Plaintiff's claims in this case, Defendants would satisfy the elements for CDA immunity:  they are an interactive computer service provider,[4] the claim is based upon information provided by another, and the claim would treat Defendants as though they published and solicited the photographs in question.

Plaintiff denies that her claims treat Defendants as though they were merely publishers of the explicit photographs and videos.  She asserts that her claim is that

---

[4] The parties do not dispute that Defendants are an "interactive computer service provider."

Defendants violated 18 U.S.C. § 1591 by failing to enact policies that would have prevented her from being trafficked by fellow Kik users. But this is exactly the type of claim that CDA immunity bars.  *See Doe v. MySpace, Inc.*, 528 F.3d 413, 420 (5th Cir. 2008) (MySpace immune under CDA from a claim that it failed to protect a user from sexual predators).  Although the *MySpace* decision pre-dated FOSTA, it is clear that FOSTA does not subject interactive computer service providers to liability for any cause of action that might otherwise be available under common law.  Rather, FOSTA removes CDA immunity only for claims "under section 1595 of Title 18, if the conduct underlying the claim constitutes a violation of section 1591 of that title." 47 U.S.C. § 230(e)(5)(A).  Had Congress intended to revoke CDA immunity for all claims involving sex trafficking on websites (as argued by Plaintiff), it could have done so; but it did not.  The plain language of the statute removes immunity only for conduct that violates 18 U.S.C § 1591.

The parties dispute the level of *mens rea* a defendant must possess for a claim under FOSTA to overcome CDA immunity.  The confusion arises from the phrase "participation in a venture" in both § 1591 (the criminal statute) and § 1595(a) (the civil remedy statute).  The criminal statute defines "participation in a venture" as "knowingly assisting, supporting, or facilitating a violation of subsection (a)(1)." 18 U.S.C. 1591(e)(4). The civil remedy statute, 18 U.S.C. § 1595, does not define "participation in a venture." Defendants argue that to defeat CDA immunity the § 1591(e)(4) definition applies and Plaintiff must – but has failed to -- show that Defendants benefitted from participation in a venture that knowingly assisted, supported, or facilitated Plaintiff being trafficked. *See United States v. Afyare,* 632 Fed. Appx. 272, 286 (6th Cir. 2016) (liability under § 1591 requires active participation in trafficking venture).

Plaintiff argues that "participation in a venture" as used in § 1595(a) does not incorporate the definition contained in § 1591(e)(4) and to do so would render superfluous the language "knew or should have known" contained in § 1595(a).  Plaintiff argues that for liability under § 1595(a) to exist she need only show that Defendants "knew or should have known" that it was participating in a venture that was engaged in sex trafficking in violation of § 1591.  She cites other known instances of sexual predators utilizing Kik to establish that Defendants knew or should have known of the possibility that she would be subjected to trafficking. (Compl. ¶¶ 15-23).

If Defendants were not interactive computer service providers, Plaintiff's argument might prevail.  A recent decision from the Middle District of Florida identified the elements of a civil claim under § 1595(a).  *S.Y. v. Naples Hotel Co.*, 2020 WL 4504976, at *2 (M.D. Fla. Aug. 5, 2020).  The court conducted a thorough review of cases involving claimed liability under § 1595(a) and found that the majority of "courts determined that [§] 1595 includes a constructive knowledge element, and that applying the definition of 'participation in a venture' provided for in § 1591(e) to the requirements under § 1595 would void the 'known or should have known' language of § 1595."  *Id. (*citing *M.A. v. Wyndham Hotels & Resorts, Inc.,* 425 F. Supp. 3d 959, 969 (S.D. Ohio 2019); *J.C. v. Choice Hotels Int'l Inc.,* 2020 WL 3035794, *1 n.1 (N.D. Cal. Jun. 5, 2020); *A.B. v. Marriott Int'l Inc.,* 2020 WL 1939678, *13 (E.D. Pa. Apr. 22, 2020); *Doe S.W. v. Lorain-Elyria Motel, Inc.,* 2020 WL 1244192, *6 (S.D. Ohio Mar. 16, 2020); *H.H. v. G6 Hosp., LLC*, 2019 WL 6682152, *4 (S.D. Ohio Dec. 6, 2019)).  Because § 1595(a) requires that a defendant "knew or should have known" that it was benefitting from or participating in a trafficking

venture, the "negligence standard of constructive knowledge" applies.  *H.H.,* 2019 WL 6682152, at *1.[5]

The *S.Y.* case and the cases cited above all involved hotel defendants who were alleged to have constructive knowledge that the plaintiffs were being trafficked on their properties.  Significantly, because the hotel defendants were not interactive computer service providers, neither FOSTA nor CDA immunity were considered.  The present case presents a different scenario, because Congress – in balancing the needs of protecting children and encouraging "robust Internet communication" – enacted a statute protecting interactive computer service providers from liability for their users' content and conduct.  If it were not for FOSTA, Defendants in this case would be completely immune from liability under the CDA.  47 U.S.C. § 230(c)(5); *MySpace*, 528 F.3d 413.

To resolve Defendants' Motion to Dismiss, this Court must consider the extent to which FOSTA has affected the immunity provided by the CDA.  Again, FOSTA states that ""[n]othing in this section (other than subsection (c)(2)(A)) shall be construed to impair or limit . . . any claim in a civil action under section 1595 of Title 18*, if the conduct underlying the claim constitutes a violation of section 1591 of that title.*" 47 U.S.C. § 230(e)(5)(A) (emphasis added).  Plaintiff argues that as a result of FOSTA, "the exacting standard of 'actual knowledge' and 'overt act' employed in a criminal prosecution under § 1591 is replaced by [a] 'constructive knowledge' standard when a civil recovery is sought under the TVPA."  (DE [29], p. 21).  But this argument would have the Court disregard the plain

---

[5] The Court notes that Plaintiff does not allege any facts that would plausibly establish Defendants knew or should have known about her particular situation or that the Identified Kik Users were using Kik for sex trafficking.  Plaintiff's allegations that Defendants knew of the Identified Kik User's practice of using Kik to furnish harmful, sexually explicit photographs (Compl. ¶ 43, 44) are conclusory and lack factual support.  *Jackson*, 372 F.3d at 1262 (conclusions and unwarranted deductions of fact will not prevent dismissal).

language and structure of FOSTA. "A statute should be interpreted so that no words shall be discarded as meaningless, redundant, or mere surplusage." *United States v. DBB, Inc.*, 180 F.3d 1277, 1285 (11th Cir. 1999) (quotation omitted).

Defendants argue that the Congressional history of FOSTA[6] shows that Congress only intended to create a narrow exception to the CDA for "openly malicious actors such as Backpage where it was plausible for a plaintiff to allege actual knowledge and overt participation." (DE [33], p. 5) and that a finding of actual knowledge and overt participation in a venture of sexual trafficking is required to defeat CDA immunity. This is consistent with the language of FOSTA. By its terms, FOSTA did not abrogate CDA immunity for all claims arising from sex trafficking; FOSTA permits civil liability for websites only "if the conduct underlying the claim constitutes a violation of section 1591." And section 1591 requires knowing and active participation in sex trafficking by the defendants. *Afyare*, 632 Fed. Appx. at 286; *see also Geiss v. Weinstein Co. Holdings, LLC,* 383 F. Supp. 3d 156, 169 (S.D.N.Y 2019) ("aiders and abettors of sex trafficking are liable under the TVPA only if they knowingly 'benefit[ ], financially or by receiving anything of value from participating in a venture which has engaged in' sex trafficking") (quoting 18 U.S.C. § 1591(a)); *Noble v. Weinstein*, 335 F. Supp. 3d 504, 524 (S.D. NY 2018) ("Plaintiff must allege specific conduct that furthered the sex trafficking venture. Such conduct must have been undertaken with the knowledge, or in reckless disregard of the fact, that it was furthering the alleged sex trafficking venture. In other words, some participation in the sex trafficking act itself must be shown.").

---

[6] *See* 164 Cong. Rec., at S1860-62 ("[FOSTA] is a narrowly crafted bill that would ensure that Section 230 of the Communications Decency Act does not provide legal immunity to websites like Backpage that knowingly facilitate sex trafficking."); H.R. Rep. No 115-572, at 5 ("general knowledge that sex trafficking occurs on a website will not suffice as the knowledge element must be proven as to a specific victim").

Plaintiff has not alleged facts that would plausibly establish that Defendants knowingly participated in the sex trafficking venture involving her; she alleges that Defendants knew that other sex trafficking incidents occurred on Kik.  This does not satisfy FOSTA's requirement that the conduct underlying the claim violate 18 U.S.C. § 1591.  For this reason, Plaintiff's claims against Defendants are barred by the immunity provisions of the CDA, 47 U.S.C. § 230(e), and the Complaint, therefore, must be dismissed.

IV.   <u>LEAVE TO AMEND</u>

Plaintiff requests leave to amend her complaint to add causes of action in negligence and strict liability for failure to warn about the dangers of being sexually exploited associated with using Kik Messenger.  This request contravenes § 230(e)(3) of the CDA, which preempts state law: "No cause of action may be brought and no liability may be imposed under any State or local law that is inconsistent with this section."  47 U.S.C. § 230(e)(3).  Plaintiff argues that a failure to warn claim is not barred by § 230 and relies upon *Doe,* 824 F.3d 846.  In that case, the owners of a website called Model Mayhem were aware of two individuals who had obtained victims' contact information from Model Mayhem's site and used the information to lure them into fake auditions where they were drugged and raped.  After the plaintiff suffered the same horrific fate, she sued the website's owner for failure to warn under California law.  The court held that CDA immunity did not bar the claims, but nothing in the plaintiff's claims involved Internet Brands' actions as a publisher of content:

> Jane Doe herself posted her profile, but she does not seek to hold Internet Brands liable for its content. Nor does she allege that Flanders and Callum posted anything to the website. The Complaint alleges only that "JANE DOE was contacted by

> Lavont Flanders through MODELMAYHEM.COM using a fake identity." Jane Doe does not claim to have been lured by any posting that Internet Brands failed to remove. Internet Brands is also not alleged to have learned of the predators' activity from any monitoring of postings on the website, nor is its failure to monitor postings at issue.
>
> Instead, Jane Doe attempts to hold Internet Brands liable for failing to warn her about information it obtained from an outside source about how third parties targeted and lured victims through Model Mayhem. The duty to warn allegedly imposed by California law would not require Internet Brands to remove any user content or otherwise affect how it publishes or monitors such content.

*Id.* at 851.  By contrast, in this case Plaintiff's failure to warn claims are inextricably linked to the harmful content solicited and posted by Kik's users.  This is precisely the type of claim for which Congress has determined that interactive computer website providers should be immune.

Although leave to amend should be freely granted, the court may decline to grant leave to amend if the amendment would be futile.  Futility justifies the denial of leave to amend where the complaint, as amended, would still be subject to dismissal. *Burger King Corp. v. Weaver,* 169 F.3d 1310, 1320 (11th Cir.1999) (citations omitted).  Because Plaintiff's proposed causes of action would be subject to dismissal, the Court will deny leave to file an amended complaint.  Accordingly, it is hereby

**ORDERED AND AJUDGED** that Defendants' Motion to Dismiss (DE [24]) is **GRANTED.** Plaintiff's Complaint is **DISMISSED WITH PREJUDICE.** The Clerk of Court is directed to **CLOSE** this case and **DENY AS MOOT** any pending motions.

**DONE AND ORDERED** in Chambers, Fort Lauderdale, Florida, this 31st day of August 2020.

_____

RAAG SINGHAL
UNITED STATES DISTRICT JUDGE

Copies furnished counsel via CM/ECF

16